[Civ. No. 32988.   Second Dist., Div. Two.   Mar. 20, 1969.]

ELMER F. KLOPFENSTEIN, Plaintiff and Appellant, v. RENTMASTER TRAILER CO. et al., Defendants and Respondents.

Harney, Ford & Schlottman and Robert E. Ford for Plaintiff and Appellant.

Brill, Hunt, DeBuys & Burby, Henry E. Kappler, Cushman & Grover, Thomas Hunter Russell and Leslie B. Joseph for Defendants and Respondents.

ROTH, P. J.—On September 16, 1962, Elmer F. Klopfenstein, plaintiff and appellant, rented a trailer from defendant and respondent, Steve Lapshansky. Lapshansky operated a service station which he had purchased six days before from Robert Meeker. The trailer was attached to his auto by an employee of Lapshansky. Appellant made no inspection of the attachment. He signed the form rental receipt and drove off. Within one-half hour thereafter, driving north in the third lane on a three-lane divided highway of the Long Beach Freeway, the tailgate of the trailer fell off and came to rest between the second and third lane of the highway. Appellant stopped his car on the gravel shoulder of the freeway and walked south on the gravel shoulder until opposite the fallen tailgate approximately 18 feet away.

He stood on the shoulder until, except for one auto in lane one (fast) traffic had cleared. The auto in question was in his opinion proceeding approximately 50 miles an hour 200 feet

south of where he stood. He calculated he could safely retrieve the tailgate and jogged out and back toward the shoulder with the retrieved tailgate in approximately 10 to 12 seconds. Returning to the gravel shoulder, he heard noise, looked back and the auto which he had observed in lane one, struck him. At the time of the impact, he was on the gravel shoulder, about 4 feet off lane three holding the tailgate. He was knocked over into a position between lanes two and three and suffered fractures of hip, shoulder and hand. He was hospitalized approximately 30 days. Appellant brought this action for damages against the driver of the auto (Egger) and the driver's employer and in addition, Lapshansky, Robert Meeker, and Rentmaster, as a corporation and as a limited partnership and all of the partners of Rentmaster (Rentmaster).

Appellant settled with Egger and Egger's employer during the trial. The other defendants moved for and each was respectively granted a nonsuit.

The uncontradicted evidence shows that respondent Meeker had sold the service station to Lapshansky six days before. During the time Meeker owned the service station, Meeker had various agreements with Rentmaster pursuant to which Rentmaster provided the service station with trailers and rental forms to enable Meeker to rent the trailers to the public. When Meeker sold the service station to Lapshansky, he had promised as part of the deal, to arrange transfer of his lease covering trailers with Rentmaster. Rentmaster did not know of the sale from Meeker to Lapshansky and had not, at the time of the accident, transferred the lease. After Meeker sold the service station, Rentmaster continued to leave its trailer and trailer rental agreement forms at the service station and Lapshansky and his employees rented the trailers and used the forms.

No evidence presented by appellant showed that the particular trailer here involved was at the service station at the time Lapshansky purchased the station, or that Meeker had made any warranties as to it or any of the other trailers or at any time prior to its rental to appellant, Meeker knew of any defect in it. It is admitted Meeker did not own the service station at the time of the accident, and had had no contact with appellant, or was he in any way connected with the transaction between appellant and Lapshansky.

Appellant testified:

"If he [Egger, the driver of the oncoming car] would have stayed in the lane he was in, I would have all day to go out there and get it and get back."

Robert E. Snyder, an expert called by appellant, testified in pertinent part:

"Q. . . . Mr. Snyder, it is your opinion that the reason that the tailgate fell off of the trailer was because neither of the locking pins had been locked, is that correct? A. Yes, counsel, I think that if either had been I couldn't pull it out at the time. I tried when I examined it at that time. If I got one side in, I couldn't get it out. Q. So, if one side had been locked, this gate could not have fallen off? A. Yes."

This appeal is from the judgment of nonsuit in favor of Meeker, Lapshansky and Rentmaster.

Appellant's evidence affirmatively showed that the tailgate would not have fallen off if it had been locked at one side. It was the duty of Lapshansky and his employee to properly attach the trailer to appellant's car, and to make certain that the tailgate was properly locked so that it would neither open nor fall off. Although there is evidence it was not possible to lock the tailgate at both upper ends, because of a "deformation or hump in the center of the cross-member on which the gate sat . . . ," there is no proof of a defective manufacture and the affirmative testimony of appellant shows that if fastened in even one position at the top, the tailgate would not have fallen off.

On this state of the record the nonsuit was properly granted as to respondents Meeker and Rentmaster.

The nonsuit granted in favor of Lapshansky presents the question of whether Egger's negligence in running his automobile into appellant, was as a matter of law, the sole cause of the accident, thus eliminating any cause of action which appellant has against Lapshansky because of Lapshansky's negligence in failing to properly fasten the tailgate.

Judgment of nonsuit can be entered only if the evidence, viewed in the light most advantageous to the plaintiff, resolving all conflicts therein in his favor, and giving him the benefit of every fact and inference pertaining to the issues involved which may be reasonably deduced therefrom, would not justify a verdict and judgment in his favor (*Lashley* v. *Koerber*, 26 Cal.2d 83, 84-85 [156 P.2d 441]; 16 Cal.Jur.2d p. 277, § 47).

Our courts have consistently held that the issue of proximate cause is a question of fact.

The court in *Jones* v. *City of South San Francisco*, 96 Cal. App.2d 427, in reversing a judgment of nonsuit on comparable facts, said at page 435 [216 P.2d 25] : ''It is usually stated that the question of proximate cause is one of fact and not one of law. It is a question of foreseeability. Where two independent actors are involved, whether the act of the person later in time breaks the chain of causation and makes the act of the earlier person a remote cause, or whether both acts concurred in causing the injury, so that both are proximate causes, are normally questions for the trier of fact where the act of the second person is reasonably foreseeable. It is a rare case where the court may hold, as a matter of law, that the intervening act breaks the chain of causation because whether it was reasonably foreseeable is a question of fact and not of law. The second act will break the chain of causation only where, under no rational interpretation of the evidence, could the later act of negligence have been reasonably foreseen.

''These principles have been established in this state for many years. One of the earliest and most frequently cited cases on the subject is *Pastene* v. *Adams*, 49 Cal. 87, where a lumber company negligently piled lumber so that some of the ends stuck out into the private driveway of the lumber yard. X negligently drove his cart so that its wheels caught one of the projecting timbers and pulled the pile down on plaintiff, a pedestrian and customer of the lumber yard. The court, in affirming a judgment for the plaintiff against the lumber yard, held that since the lumber company was negligent in piling the timbers 'the negligence continued until they were thrown down, and (concurring with the action of Randall) was a direct and proximate cause of the injury.' ''

▮ The fact that the person injured, rather than a third person, motivates the intervening act does not make it an efficient intervening cause. (*Haverstick* v. *Southern Pac. Co.*, 1 Cal.App.2d 605, 611 [37 P.2d 146].)

Appellant had a moral duty to remove the tailgate from the highway.

Section 23114 of the Vehicle Code provides that no vehicle shall be moved on a highway unless it is constructed as to prevent any of its contents or load from dropping or otherwise escaping therefrom.

In *Gulley* v. *Warren*, 174 Cal.App.2d 470 [345 P.2d 17], plaintiff, a truck driver, went out on the highway to inspect his load of shingles to determine if they were in danger of falling on the highway. The court said at page 483 : ''In the

instant case the fact that the load of shingles was in danger of being lost was a factor to be considered, since to have allowed the shingles to have remained would have violated the provisions of section 601, subdivision (b) of the Vehicle Code." (Former Veh. Code, § 601, subd. (b) is now Veh. Code, § 23113.)

Section 630 of the Vehicle Code provides that a "trailer" is a vehicle.

Appellant testified:

"Q. Why did you go out on the freeway to take the tailgate off? A. I wasn't going to get it, to start off with, and if there had been more traffic on the freeway, I wouldn't have gone out, but when the two cars passed, just as I got even with it, one of the wheels hit that and bounced up about 2 feet high, so I says to myself I had better get that off of there, and that other car was far enough down the freeway that I could get it and get back, or any one of the people here could have went out there and got it and got back. Q. In other words, did you think that this thing on the freeway might cause an accident? A. It could have flopped up and hit a car and caused a good wreck, and maybe killed somebody."

At bench, if the tailgate of the trailer had been properly fastened, it would not have fallen upon the highway endangering travelers and appellant would not have had a moral responsibility to retrieve it. Whether the failure of Lapshansky to perform his duty to securely fasten the tailgate was a proximate cause of the injury, is a question of fact.

The decisions of our appellate courts declare uncompromisingly that a factual issue should only be removed from a jury's consideration when reasonable minds cannot differ on the conclusion to be drawn from the evidence. The evidence in this case and the applicable law present a situation in respect of which reasonable and honest people can come to different conclusions on the question of liability. The removal of the factual question as to proximate cause and claimed intervening, superseding cause, effectively denied appellant his right to have that issue of fact determined.

The judgment of nonsuit is reversed as to respondent Lapshansky and affirmed as to respondents Meeker and Rentmaster.

Costs on appeal to be borne equally by appellant and respondent Lapshansky.

Herndon, J., and Wright, J., concurred.

A petition for a rehearing was denied April 9, 1969, and appellant's petition for a hearing by the Supreme Court was denied May 14, 1969. Peters, J., was of the opinion that the petition should be granted.