[Civ. No. 30980. First Dist., Div. Four. Mar. 11, 1974.]

ELVA G. AYER, Plaintiff and Appellant, v.
PHILIP K. BOYLE et al., Defendants and Respondents.

**COUNSEL**

Robert O. Wilhelm for Plaintiff and Appellant.

Tamba, Hill, Schneider, Leach & D'Andre, Andrew Schneider and George L. Cooke for Defendants and Respondents.

**OPINION**

**CHRISTIAN, J.**—Plaintiff, the widow of Eugene F. Ayer, appeals from a judgment of nonsuit entered in her action to recover damages for Ayer's death in the crash of a private aircraft piloted by respondent Buscaglia and owned by Buscaglia and respondent Boyle. The action was tried upon allegations that Ayer's death was caused by the negligence and willful misconduct of respondents. We hold that the airplane "guest statute" is unconstitutional, and reverse the judgment as to Buscaglia because there was substantial evidence that the accident was caused by his negligence.

In early 1961, respondents purchased a Ryan aircraft of a type used as a trainer in World War II. The plane received its last annual inspection

and relicensing on May 21, 1961.[1] After the license expired in May of 1962, the plane was never submitted for relicensing; respondents spent their spare time during the next five and one-half years dismantling, refurbishing, and rebuilding the aircraft, intending to enter it in a competition for restored antique aircraft. Respondents removed the wings and engine and took them to a licensed shop for overhaul. They worked on the fuselage themselves for several months.

In the summer of 1967, respondents took all the parts to an aircraft repair shop in Half Moon Bay. There a licensed mechanic worked on the plane for about four months, primarily supervising detail work done by respondents. The mechanic last saw the aircraft two or three weeks before the accident. He considered it be in excellent flying condition at that time subject to the completion of several minor items which he listed for respondents. He did not know whether respondents ever completed the work.

Respondents then requested another mechanic, authorized by the Federal Aviation Agency to inspect and license airplanes, to make an inspection of their aircraft in preparation for licensing. Approximately one month before the crash, the inspector made a preliminary examination of the plane and decided that it was not ready for inspection; cotter pins, safeties, and some instruments were missing, but one of the two cockpits was equipped with all the instruments needed for normal daylight flying. Inspection and licensing of the aircraft was never completed.

On the morning of October 8, 1967, respondents took the plane for its first flight since being rebuilt; Buscaglia, who was at the controls, flew the plane around the airport twice. After the flight, Boyle left the airport and did not return. That afternoon Ayer, who was Boyle's close friend and fellow employee, arrived at the airport and went for a ride in the airplane with Buscaglia. The flight ended in a crash which killed Ayer. An eyewitness to the crash testified that the plane came straight down, nose first. The engine was sputtering at first, but became silent on the way down.

Appellant's complaint alleged willful misconduct on the part of both respondents, in an effort to establish liability despite the provisions of the airplane guest statute (Pub. Util. Code, § 21406).[2] However, the com-

---

[1] 14 Code of Federal Regulations sections 43.5, 47.3 47.44.

[2] Public Utilities Code, section 21406: "A guest riding in or upon any aircraft without giving compensation, or any other person, does not have any right of action for civil damages against the airman flying the aircraft or against any other person otherwise legally liable for the conduct of the airman, on account of personal injury to, or the death of, the guest during such ride, unless the plaintiff in the action establishes that the injury or death proximately resulted from the intoxication or wilful misconduct of the airman."

plaint also alleged simple negligence, thus putting before the court a legal issue as to the effectiveness and applicability (thus, the constitutionality) of the guest statute. There was no evidence that decedent was a passenger for hire or that the pilot was intoxicated. Appellant argues that there was substantial evidence of willful misconduct, but that issue disappears from the case in the light of the California Supreme Court's decision in *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212].

In *Brown* v. *Merlo,* the Supreme Court held that the automobile guest statute violates the equal protection guarantees of the state and federal Constitution. The automobile guest statute, section 17158 of the Vehicle Code, denied a guest who rode in a vehicle "upon a highway without giving compensation for such ride" a cause of action against the driver for negligence; recovery was permitted if injury or death resulted from the intoxication or willful misconduct of the driver.[3] A statute may single out a class of persons for distinctive treatment only if the classification bears a rational relation to the purposes of the legislation. The court pointed out that the automobile guest statute establishes three distinct levels of classification: (1) it permits "paying" automobile passengers to recover for negligence while denying recovery to "guests"; (2) it precludes automobile guests from recovery for injuries caused negligently while other social guests are allowed to recover for such injuries; and (3) it distinguishes between subclasses of automobile guests, withholding recovery from "guests injured while 'in a vehicle' 'during a ride' 'upon a public highway,' but permitting recovery by auto guests injured in other circumstances." (*Brown* v. *Merlo, supra,* 8 Cal.3d 855, 863.)

Two justifications—the protection of hospitality and the elimination of collusive lawsuits—have traditionally been proffered to support this classification scheme. The court rejected both, analogizing to *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] (where the distinctions between business invitee and social guest were abolished). In *Brown* v. *Merlo* the Supreme Court was not called upon for a holding as to the effectiveness of the airplane guest statute. But the opinion does mention the airplane guest statute: "California law does

[3]The pertinent part of Vehicle Code section 17158 is as follows: "[N]o person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

contain two other provisions under which nonpaying guests are generally deprived of a cause of action for negligence: the 'airplane guest statute' (Pub. Util. Code, § 21406) and the 'motorboat guest statute' (Harb. & Nav. Code, § 661.1), both of which are modeled after the automobile guest statute attacked in the instant case. Although these statutes do place automobile guests on an equal footing with some other guests in California, we cannot discern how automobile, airplane or motorboat guests can rationally be distinguished from all other guests in relation to an asserted state interest in protecting hospitality." (8 Cal.3d at p. 864, fn. 5.) This reference to the airplane guest statute suggests that the airplane guest statute is unconstitutional because it creates a class for no rational reason: equal protection is denied because reason does not support treating the class encompassing guests in airplanes, automobiles, and boats differently from the class comprising all other guests.

The analysis adopted by the court in *Brown* v. *Merlo* demonstrates that neither the promotion of hospitality nor the prevention of collusive lawsuits provides a rational basis for the classifications set up by the airplane guest statute. It would be irrational to assume that permitting recovery for negligence would restrict hospitality or that a host pilot is likely to crash his airplane in order to foster a collusive lawsuit by his guest.

We recognize that the analysis of the automobile guest statute in *Brown* v. *Merlo* is not wholly applicable to the airplane guest statute. First, the Aircraft Financial Responsibility Act (Pub. Util. Code, §§ 24350-24361, adopted after the accident in this case) does not require coverage of any person "riding in or upon any aircraft without giving compensation" (Pub. Util. Code, § 24351, subd. (c)), even though the guest statute permits recovery where intoxication or willful misconduct is shown. In contrast, the coverage required by Vehicle Code sections 16451 and 16452 extends to any "liability imposed by law" that the insured may have for the injuries of guests. Second, although the airplane guest statute, like the automobile guest statute, applies only to injuries occurring "during [the] ride," it does not contain requirements comparable to "in any vehicle" or "upon a highway." Consequently, the airplane guest statute does not create such disparate subclasses, within the class of airplane guests, as Vehicle Code section 17158 did within the class of automobile guests.

Despite these distinguishing features we conclude that the airplane guest statute is unconstitutional. The hospitality justification for denying recovery to a guest "(1) does not explain the distinction drawn between [airplane] guests and other guests, [and] (2) does not constitute a rational ground for withdrawing a guest's right to recover for negligently inflicted injuries, . . ."

*(Brown* v. *Merlo, supra,* 8 Cal.3d at p. 872.) The prevention-of-collusive-suits justification is particularly unsound as to aircraft. No rational purpose justifies treating airplane guests differently from other guests.

The remaining question is whether appellant had presented sufficient evidence of respondents' negligence to go to the jury. ■ A judgment of nonsuit may properly be entered only if the evidence, viewed most favorably to the plaintiff with all conflicts resolved and all legitimate inferences drawn in his favor, does not support a verdict for the plaintiff. *(Klopfenstein* v. *Rentmaster Trailer Co.* (1969) 270 Cal.App.2d 811, 814 [76 Cal.Rptr. 126].) ■ An appellate court must resolve every conflict in the evidence in favor of the plaintiff, consider every reasonable inference and every presumption which supports the plaintiff, and accept as true all direct or indirect evidence which tends to sustain the plaintiff's case. *(Wickoff* v. *James* (1958) 159 Cal.App.2d 664, 667-668 [324 P.2d 661].)

■ The evidence must be considered separately as to Boyle and Buscaglia. Boyle was not present when Buscaglia unlawfully took Ayer up in the unlicensed aircraft. Although it was foolish for Boyle to go up with Buscaglia before the plane had been inspected and licensed, there was no evidence that Boyle should have known that Buscaglia might take up a guest who was not a participant in the venture to restore the old airplane. The judgment of nonsuit was proper as to Boyle.

■ But there was evidence of negligence on the part of Buscaglia. It was stipulated that respondents' plane was not licensed when the accident occurred; the plane had not passed the inspection required for federal licensing. ■ Operation of an unlicensed aircraft violates the terms of section 21411 of the Public Utilities Code and federal regulations.[4] The statute and the regulation are intended to promote public safety by assuring that aircraft will be properly maintained. A defendant's violation of such a statute or regulation creates a rebuttable presumption of failure to exercise due care; it shifts the burden of proof to the defendant. (Evid. Code, § 669; see Witkin, Summary of Cal. Law (1969 supp. to vols. 1, 2) § 230, p. 655.) ■ The jury might reasonably have inferred that the accident was caused by a mechanical defect that would have been discovered in a proper inspection or by negligent operation of the aircraft by Buscaglia. Moreover, the doctrine of res ipsa loquitur might properly be invoked if the jury determined that (1) the accident was of a kind that does not ordinarily occur without a negligent act; (2) the instrumentality which caused the accident was under the exclusive control of the defendant; and (3) the

---

[4] 14 Code of Federal Regulations section 47.3, subdivision (b).

accident was not due to any action by the plaintiff. (*Nelson* v. *American Airlines, Inc.* (1968) 263 Cal.App.2d 742, 745 [70 Cal.Rptr. 33].)

Citing *Parker* v. *James Granger, Inc.* (1935) 4 Cal.2d 668 [52 P.2d 226] (cert. den., 298 U.S. 644 [80 L.Ed. 1375, 56 S.Ct. 958]), respondents assert that res ipsa loquitur may not be invoked in a suit arising from the crash of an airplane equipped with dual controls; in a dual controlled aircraft, the pilot does not have exclusive control. In *Parker,* the passenger occupying the seat next to the pilot of the rented aircraft was to operate the dual controls at certain times for purposes of the motion picture filming which was planned. (*Id.,* pp. 675-676.) On the basis of that fact, the court in *Parker* held that the pilots were not in exclusive control and res ipsa loquitur did not apply. In the present case, there was no comparable circumstance. The decedent was not a pilot and had never taken flying lessons. The fact that he occupied a cockpit which was provided with controls does not compel a conclusion that the aircraft was not under the exclusive control of the pilot in command.

The judgment is affirmed as to respondent Boyle; as to respondent Buscaglia, the judgment is reversed for a new trial.

Caldecott, P. J., and Rattigan, J., concurred.