[Civ. No. 54397. First Dist., Div. One. Aug. 3, 1982.]

HILLEL I. MAISEL, Plaintiff and Appellant, v.
SAN FRANCISCO STATE UNIVERSITY, Defendant and
Respondent.

COUNSEL

Edwin Train Caldwell, Caldwell & Johnson, Victoria J. De Goff and De Goff & Sherman for Plaintiff and Appellant.

George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, Willard A. Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, James R. Schwartz and Edward P. Garson, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**ELKINGTON, J.**—The instant appeal concerns the state's tort liability act, found in the Government Code, commencing with section 900. It is taken from three related orders of the superior court denying plaintiff Maisel's petition under Government Code section 946.6, to be relieved of the requirement of Government Code section 945.4 that a timely written claim be filed for damages for personal injuries allegedly caused by the negligence of defendant San Francisco State University (hereafter sometimes the University).

Among other things, Maisel contends that: "The claim presentation requirements were tolled under Insurance Code section 11583 as a matter of law."

Accompanying Maisel's superior court petition was his declaration, under penalty of perjury, in which he asserted the following:

"I am the claimant in the above-entitled matter. On or about April 14, 1980, at San Francisco State University, I sustained a permanent injury to my leg when an exercise machine, known as a Universal Leg Press Machine, malfunctioned and the weights (300 pounds) collapsed on my leg.

"I was directed to the Student Health Center which is run by the Administration at San Francisco State University. I filled out an accident report describing where the accident occurred and how it happened. I was treated by the Student Health Center for about two weeks when they advised me to have my injury examined and treated by a plastic surgeon. At the time I was requested to fill out an accident report for

the Student Health Center no mention whatsoever was made of any claims form. Further during the period of my treatment by the San Francisco State University Health Center no one, at anytime, mentioned the need for a claim to be filed with the State Board of Control within 100 days of the accident.

"I first consulted an attorney in September of 1980, and was advised at that time of the necessity of a claim within 100 days of the accident."

Insurance Code section 11583, enacted 1968, provides: "No advance payment or partial payment of damages made by any person, or made by his insurer under liability insurance as defined in subdivision (a) of Section 108, as an accommodation to an injured person or on his behalf to others or to the heirs at law or dependents of a deceased person because of an injury or death claim or potential claim against any person or insured shall be construed as an admission of liability by the person claimed against, or of that person's or the insurer's recognition of such liability, with respect to such injured or deceased person or with respect to any other claim arising from the same accident or event. Any such payments shall, however, constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured or deceased person which does not expressly take into account such advance payments. *Any person*, including any insurer, *who makes such an advance or partial payment, shall at the time of beginning payment, notify the recipient thereof in writing of the statute of limitations applicable to the cause of action which such recipient may bring against such person as a result of such injury* or death, *including any time limitations within which claims are required to be made against the state or any local public entity when such payments are made on behalf of such public entities. Failure to provide such written notice shall operate to toll any such applicable statute of limitations or time limitations from the time of such advance or partial payment until such written notice is actually given.*" (Italics added.)

We observe that the statute has twice been given effect by appellate courts of the state where *insurers* had made "advance payment or partial payment of damages" to injured persons on behalf of actual, or potential, personal injury action defendants. No written notices at the time of such payments, of the applicable *statute of limitations*, were given the injured persons. In each case, it was held that the statute of limitations was tolled, as provided by Insurance Code section 11583.

(See *Llanera* v. *M & S Pipe Supply Co.* (1979) 92 Cal.App.3d 332 [154 Cal.Rptr. 704]; *Malinski* v. *Wegman's Nursery & Landscaping, Inc.* (1980) 102 Cal.App.3d 282 [162 Cal.Rptr. 287].)

No similar authority is found in a noninsurance context where the state, or as here one of its agencies, potentially liable as a tortfeasor, had made "advance payment or partial payment of damages" to an allegedly injured person. But the clear language of section 11583 includes within its coverage the state, or an agency of it, as it also does the "time limitations within which claims are required to be made against the state" under the tort liability act.

■ The University, citing *Tyus* v. *City of Los Angeles* (1977) 74 Cal.App.3d 667, 673 [141 Cal.Rptr. 630], argues that the state was "under no duty to advise appellant of the claims statutes or to consult an attorney." Insurance Code section 11583 was in that case unmentioned and, of course, "cases are not authority for propositions not considered." (*Leaming* v. *Municipal Court* (1974) 12 Cal.3d 813, 816 [117 Cal.Rptr. 657, 528 P.2d 745].) We nevertheless agree that the statute imposed no "duty" upon the state; it simply tolled the tort claims act's claim filing requirement upon noncompliance with the statute's provisions.

■ We find resolution of the University's second argument more difficult. It is contended: "Insurance Code section 11583 provides for several conditions precedent before any tolling will occur. There must be a 'payment or partial payment of damages' made by the potential tort-feasor or his insurer 'as an accommodation to an injured person because of a potential claim.' In the present action there was never any payment made to the petitioner as contemplated by the statute."

Following his injury, and as stated by Maisel in his above-quoted declaration: "I was directed to the Student Health Center, which is run by the Administration at San Francisco State University.... I was treated by the Student Health Center for about two weeks...." The issue is whether such treatment, in whole or in part, was "advance payment or partial payment of damages" under section 11583.

Appended to the University's appellate brief is a copy of its approved "Policy on Student Health Services." The policy provides for "*Basic* Student Health Services" (our italics), which are paid for by the students upon their matriculation. Among such basic services is

"Emergency first aid [which] shall be provided for conditions immediately endangering life or health or the alleviation of pain or suffering." Also available are "*Augmented* Student Health Services" (our italics) which are *not* "required to treat acute or subacute conditions, illnesses and injuries." Such augmented services are ordinarily funded by a "uniform schedule of fees" charged to, and paid by, the student recipients of the services upon or after their rendition.

Augmented services rendered for which payment is not demanded are, we opine, in a context such as that before us rather clearly "advance payment or partial payment of damages" under the statute. Just as clearly, it seems to us, already paid for basic services are not.

But we nevertheless, from the evidence before us, encounter difficulty distinguishing between the two types of health service provided under the University's policy, which it is observed was adopted to make clear which "services are authorized [since] students have been receiving some services which may or may not have been intended." Nor does the evidence indicate whether payment was demanded or made for such services as were furnished Maisel.

We think it would serve the interests of justice to remand the cause to the superior court for an evidentiary determination whether Maisel had, under the requirements of section 11583, been given "advance payment or partial payment of damages." If so, other conditions of the statute being met, his petition should be granted; otherwise, it may be denied.

Upon such remand the superior court's discretion will be guided by authority of the state's high court. "[D]enials of such relief by the trial court are scanned more carefully than cases where the court granted relief, to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application." (*Viles* v. *State of California* (1967) 66 Cal.2d 24, 29 [56 Cal.Rptr. 666, 423 P.2d 818]; *County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d 545, 552 [94 Cal.Rptr. 158, 483 P.2d 774].) ▪ In the enactment of statutes such as Government Code section 946.6, the Legislature sought to eliminate "'a trap for the unwary and ignorant claimant,'" and "to alleviate the harshness of strict compliance with the claims presentation period." (*Viles* v. *State of California, supra*, 66 Cal.2d pp. 30-31); the Legislature's manifest intent was "not to require strict adherence to inflexible time limits," and "a mistake of law

may be excusable when made by a layman but not when made by an attorney." (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 479 [58 Cal.Rptr. 249, 426 P.2d 753].) "[A]nd the modern trend of judicial decisions [is] in favor of granting relief unless absolutely forbidden by statute." (*Viles* v. *State of California, supra,* 66 Cal.2d pp. 24, 33.)

We discern no merit in plaintiff's contention that the tort claims act is unconstitutional. It has been held to the contrary in *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 889, fn. 20 [112 Cal.Rptr. 540, 519 P.2d 588], *Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, 481, and *Dias* v. *Eden Township Hospital Dist.* (1962) 57 Cal.2d 502, 504 [20 Cal.Rptr. 630, 370 P.2d 334]. We are bound by those holdings. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

It is of no significance that section 11583, here sought to be applied against the state in a noninsurance context, is found in division 2, part 3 of the *Insurance* Code. Section 6 of that code provides: "Division, part, chapter, article, and section headings contained herein shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning, or intent of the provisions of any division, part, chapter, article, or section hereof."

Nor are we persuaded that Maisel is unentitled to relief under Insurance Code section 11583 for his claimed failure to raise the point in the superior court. His above-quoted declaration, at least debatably, raised the issue. Where the claimed unraised point concerns, as here, a question of law rather than of fact, the rule is ordinarily inapplicable. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) And if, and to the extent that, the University had no opportunity to present evidence in the superior court, any prejudice arising therefrom will be corrected upon our remand to that court.

The orders are reversed, and the superior court will take such further proceedings as are not inconsistent with the views we have expressed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied September 2, 1982.