[L.A. No. 31644. Dec. 30, 1983.]

MARIAN LEE EBERSOL, Plaintiff and Appellant, v.
JAMES F. COWAN, as Superintendent, etc., Defendant and Respondent.

428

**COUNSEL**

Ghitterman, Hourigan, Grossman, Finestone & Perren, Ghitterman, Hourigan, Grossman, Finestone & Schumaker, Steven Z. Perren, Allan Ghitterman and George Benz for Plaintiff and Appellant.

Leonard Sacks, Victoria J. De Goff, Wylie A. Aitken, Harlan Arnold, Glen T. Bashore, Ray Bourhis, Richard D. Bridgman, Edwin Train Caldwell, Robert E. Cartwright, David S. Casey, Jr., Harry J. Delizonna, Douglas K. deVries, Paul A. Eisler, Sanford M. Gage, Ian Herzog, G. Dana Hobert, Stanley K. Jacobs, Harvey R. Levine, John C. McCarthy, Timothy W. Peach, Joseph Posner, Roberta Ritter, John M. Van Dyke, Arne Werchick and Stephen I. Zetterberg as Amici Curiae on behalf of Plaintiff and Appellant.

Ives, Kirwan & Dibble, Martin J. Kirwan and Herbert Jung for Defendant and Respondent.

John K. Van de Kamp, Attorney General, Nelson Kempsky, Chief Deputy Attorney General, Richard D. Martland, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Seward L. Andrews and Bruce J. Braverman, Deputy Attorneys General, Robert F. Carlson, Joseph A. Montoya, Robert L. Meyer and Robert W. Vidor as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

**REYNOSO, J.**—Marian Lee Ebersol appeals from an order of the Superior Court of Ventura County denying her relief from the claim presentation requirement of Government Code section 945.4.[1] The sole question before us is whether the trial court abused its discretion in concluding that appellant's failure to timely file a claim against respondent Ventura County Superintendent of Schools was not due to mistake, inadvertence, surprise, or excusable neglect, the statutorily provided bases for relief under section 946.6.

For the reasons discussed below, we conclude that the trial court abused its discretion. We hold that, under the circumstances of this case, Ms. Ebersol's failure to timely identify a possible cause of action against the county superintendent of schools constituted excusable neglect. We remand to the trial court for a determination of whether respondent would be prejudiced by granting relief in this case.[2]

Section 911.2 requires that a claim against a public entity relating to a cause of action for personal injury be presented to that entity not later than the 100th day after the accrual of the cause of action.[3] Under section 945.4, presentation and action on, or rejection of, such a claim are conditions precedent to the commencement of suit against the public entity on the cause of action for which the claim is required.[4] When a claim has not been timely presented, section 911.4 permits written application to the public entity for

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] In view of our disposition of this case, we do not consider, as does the concurring opinion, the contention that the claim presentation requirement is unconstitutional. We have previously upheld the constitutionality of this requirement. (See *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 481 [58 Cal.Rptr. 249, 426 P.2d 753]; *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 89-890, fn. 20 [112 Cal.Rptr. 540, 519 P.2d 588].)

[3] Section 911.2 provides in pertinent part: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than the 100th day after the accrual of the cause of action."

[4] Section 945.4 provides in pertinent part: "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ."

As defined by section 900.2, "Board" means:

"(a) In the case of a local public entity, the governing body of the local public entity.

"(b) In the case of the State, the State Board of Control."

leave to file a late claim.[5] If, under section 911.6, the public entity denies or fails to act on the application within 45 days,[6] section 946.6[7] authorizes a petition to the appropriate court for relief from the provisions of section 945.4.

The court must grant the petition under section 946.6, subdivision (c)(1), if the claimant demonstrates by a preponderance of the evidence (*Shank* v. *County of Los Angeles* (1983) 139 Cal.App.3d 152, 156 [188 Cal.Rptr. 644]) that the application to the public entity under section 911.4 was made within a reasonable time not exceeding one year after the accrual of the cause of action. It must also conclude that the failure to timely present the claim was through mistake, inadvertence, surprise, or excusable neglect. Under section 946.4, subdivision (e), the trial court must make an independent determination upon the petition, relying upon any affidavits in support of, or in opposition to, the petition and any additional evidence received at the hearing on the petition.

---

[5]Section 911.4 provides in pertinent part: "(a) When a claim that is required by Section 911.2 to be presented not later than the 100th day after the accrual of the cause of action is not presented within such time, a written application may be made to the public entity for leave to present such claim.

"(b) The application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim. The proposed claim shall be attached to the application."

[6]Section 911.6 provides in pertinent part:

"(a) The board shall grant or deny the application within 45 days after it is presented to the board. The claimant and the board may extend the period within which the board is required to act on the application by written agreement made before the expiration of such period.

"(b) The board shall grant the application where:

"(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced by the failure to present the claim within the time specified in Section 911.2 . . .

"(c) If the board fails or refuses to act on an application within the time prescribed by this section, the application shall be deemed to have been denied on the 45th day or, if the period within which the board is required to act is extended by agreement pursuant to this section, the last day of the period specified in such agreement."

[7]Section 946.6 provides in pertinent part: "(a) Where an application for leave to present a claim is denied or deemed to be denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from the provisions of Section 945.4. The proper court for filing the petition is a court which would be a competent court for the trial of an action on the cause of action to which the claim relates . . . .

"(c) The court shall relieve the petitioner from the provisions of Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4 and was denied or deemed denied pursuant to Section 911.6 and that:

"(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity establishes that it would be prejudiced if the court relieves the petitioner from the provisions of Section 945.4. . . ."

The trial court's work is not completed after it determines, if appropriate, that a failure to timely present a claim was through mistake, inadvertence, surprise, or excusable neglect. Under section 946.6, subdivision (c)(1), the court must then determine whether the public entity would be prejudiced by the granting of the petition.

I

The facts are undisputed. On February 17, 1981, while employed as a school bus driver by the Channel Islands Bus System, a private company, Ms. Ebersol was bitten on the left wrist by a mentally retarded teenage boy whom she was transporting to a work training program at the Camarillo Air Base. Unknown to Ms. Ebersol, the work training program was operated under the auspices of the Department of Special Education of the Ventura County Superintendent of Schools (County) which had contracted with the Channel Islands Bus System to provide transportation.

Ms. Ebersol began employment with the Channel Islands Bus System in August 1978. During the three weeks prior to February 17, 1981, she was responsible for picking up mentally retarded teenagers and young adults at their homes in the City of Oxnard and transporting them to the Camarillo Air Base for participation in the work training program.

On February 17, 1981, Ms. Ebersol took Mark Cates from his home in Oxnard to the air base. Enroute, Ms. Ebersol noticed that Mark had rubbed a candy bar on his face and was rocking in his seat. In accordance with the instructions of her supervisor, Ms. Ebersol stopped the bus and walked a few seats back to where Mark was sitting. She tried to calm him. As she spoke, she placed her left hand on Mark's shoulder. Mark turned toward Ms. Ebersol, smiled, and bit her left wrist.

Ms. Ebersol finished the run, returned to the bus yard and informed her supervisor of the incident. Shortly thereafter, she noticed swelling and broken skin where she had been bitten.

Ms. Ebersol went to the Ventura County Hospital at 11:15 that same morning. A doctor wrapped her arm and instructed her not to drive. That afternoon, in response to a call from the hospital, she returned there for the purpose of receiving a tetanus shot.

On that same afternoon, during the time between her hospital visits, Ms. Ebersol telephoned a Santa Paula attorney whom she knew, and explained the incident to him. The attorney informed her that she did not have a case and he was not retained.

The next day, Ms. Ebersol returned to the hospital with a still swollen and painful wrist. She was given an antibiotic. She returned to the hospital again on the following day, and was admitted for three days of intravenous therapy. She was released from the hospital on February 21, 1981. On February 27, she was again admitted to the hospital and received intravenous therapy for 12 days. She was released from the hospital on March 10, 1981, and received outpatient physical therapy for the next seven days.

On March 13, 1981, Ms. Ebersol contacted a Ventura attorney recommended by her father through a Florida attorney. The Ventura attorney also advised that she had no case and was not retained.

Ms. Ebersol was readmitted to the hospital on March 19, and remained there until March 27, 1981. Her condition was finally diagnosed as "Volkmann's contracture." This condition, resulting from the bite, involves tissue degeneration which results, as in Ms. Ebersol's case, with the hand going into a claw position.

Ms. Ebersol underwent surgery and her hand was put into a surgical cast on March 25, 1981. This cast was removed on April 2, and a plaster cast applied. The plaster cast was removed after two weeks and a fiberglass cast was applied. On May 2, the fiberglass cast was removed. On June 9, a new cast was applied. Ms. Ebersol is apparently still undergoing medical treatment.

During the period from March 14 to June 11, 1981, Ms. Ebersol telephoned seven additional attorneys, all of whom she had located in the yellow pages. Not one of these attorneys expressed an interest in her case and none of them advised her regarding the nature of her claim.

Unknown to Ms. Ebersol, on May 28, 1981, the 100-day limitation for filing a claim against the County expired under section 911.2.

On June 11, 1981, Ms. Ebersol went to the Ventura law firm which now represents her and to which she was referred by a former coworker. She initially met with a paralegal employed by the firm. The paralegal advised Ms. Ebersol that she had a workers' compensation claim. Attorney Steve Perren joined the meeting, and indicated that while Ms. Ebersol did have a workers' compensation claim, she did not appear to have any claim for personal injuries on the basis of a "third-party" action.

Later that afternoon, Mr. Perren discussed the case with another partner of the law firm. They determined that if the agency responsible for the work training program kept records on the care and well-being of the youths who

participated therein, then a third-party action may lie against that agency. They determined that under the rule set forth in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], if the agency knew or should have known of the dangerous propensities Mark Cates exhibited in the instant case, it might have had a duty to advise persons foreseeably coming in contact with the student.

Mr. Perren contacted Ms. Ebersol that afternoon and set an appointment for the first available date, June 16, 1981. On June 16, Ms. Ebersol and Mr. Perren discussed the facts of the case in more detail. Mr. Perren tried without success to identify by telephone the agency responsible for the work training program. The following day, after many additional telephone calls, Mr. Perren ultimately determined that the program was operated under the auspices of the County. Mr. Perren notified Ms. Ebersol, who retained Mr. Perren to pursue her claim.

On June 26, 1981, 127 days after the accrual of her cause of action, Ms. Ebersol presented to the County a written application for leave to file a late claim pursuant to section 911.4. Attached thereto was a proposed claim against the governmental entity complying with section 910. On July 1, 1981, the application was summarily rejected by a letter signed by the assistant superintendent of schools.

Thereafter, Ms. Ebersol petitioned the Ventura County Superior Court for relief from the claim requirement pursuant to section 946.6. Submitted with the petition were the declarations of Ms. Ebersol and Mr. Perren, and supporting points and authorities. These declarations set forth the facts described above and included a statement by Ms. Ebersol that she had had no prior experience with courts or claims for personal injuries, was ignorant of the law which relates to claims that are made against governmental entities, and was unaware that she had any claim of any sort against any governmental entity relating to her injury of February 17, 1981. Respondent submitted points and authorities in opposition to the petition but filed no opposing declarations.

On August 27, 1981, the trial court denied the petition on the ground that Ms. Ebersol failed to make a sufficient showing of mistake, inadvertence, surprise or excusable neglect, as required under section 946.6 for the granting of such petitions. The court cited *City of Fresno* v. *Superior Court* (1980) 104 Cal.App.3d 25, 32 [163 Cal.Rptr. 807].

II

Did the trial court abuse its discretion in denying Ms. Ebersol's petition?

The determination of the trial court in granting or denying a petition for relief under section 946.6 will not be disturbed on appeal except for an abuse of discretion.[8] (*Viles* v. *State of California* (1967) 66 Cal.2d 24, 28 [56 Cal.Rptr. 666, 423 P.2d 818].) Abuse of discretion is shown where uncontradicted evidence or affidavits of the petitioner establish adequate cause for relief. (*Ibid.*)

Section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary claimant. (*Viles, supra,* at pp. 30-31.) The remedial policies underlying the statute are "that wherever possible cases be heard on their merits, and any doubts which may exist should be resolved in favor of the application." (*Id.,* at p. 29.) Thus, "[a]n appellate court will be more rigorous in examining the denial of such relief than its allowance." (*County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d 545, 552 [94 Cal.Rptr. 158, 483 P.2d 774].)

We have said that the showing required for relief under section 946.6 because of mistake, inadvertence, surprise or excusable neglect is the same as required under Code of Civil Procedure section 473 for relieving a party from a default judgment (see, e.g., *County of Santa Clara, supra,* at p. 550, fn. 1; *Viles, supra,* 66 Cal.2d 24, 29).

Ms. Ebersol contends that her ignorance of the existence of a possible cause of action against the County superintendent of schools and hence her failure to timely file a claim against it, in light of her consistent efforts to retain legal representation, constituted mistake or excusable neglect which warrants the granting of relief under section 946.6. Applying the standards set forth above, we agree that relief should be granted on the basis of excusable neglect and that the trial court abused its discretion in denying such relief.

Excusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances. (*Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, 476.) In general, cases granting relief on the basis of excusable neglect involve plaintiffs who acted diligently to retain counsel within the 100-day limitation period. It is

---

[8]An order denying a petition for leave to file a late claim under section 946.6, and hence denying relief from the provisions of section 945.4, is appealable. (*Rivera* v. *City of Carson* (1981) 117 Cal.App.3d 718, 723, fn. 2 [173 Cal.Rptr. 4].)

usually the neglectful conduct of counsel, or counsel's staff, imputed to plaintiff, which is determined to be excusable.[9]

In contrast, as Ms. Ebersol points out, the cases denying relief under section 946.6 involve situations where the plaintiff failed to take any action whatsoever in pursuit of his or her claim within 100 days after the accrual of the cause of action;[10] cases where the condu;t of plaintiff's retained counsel was clearly unreasonable or inexcusably dilatory;[11] and cases in

---

[9]The neglectful conduct in these cases has been relatively minor. See, e.g., *Segal* v. *Southern California Rapid Transit Dist.* (1970) 12 Cal.App.3d 509 [90 Cal.Rptr. 720] (relief granted on the basis of excusable neglect where plaintiff's counsel, retained on the 93d day after the accrual of the cause of action, incorrectly computed the 100-day period and filed the claim on the 101st day); *Nilsson* v. *City of Los Angeles* (1967) 249 Cal.App.2d 976 [58 Cal.Rptr. 20] (relief granted where plaintiff's counsel incorrectly calendared the date of the 100th day); *Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529 [148 Cal.Rptr. 729] (relief granted where the investigator of plaintiff's counsel failed to make certain critical inquiries as to the identity of an entity against which the plaintiff had a possible cause of action, although it was determined that he was otherwise diligent in his investigation). See also *Flores* v. *Board of Supervisors* (1970) 13 Cal.App.3d 480 [91 Cal.Rptr. 717, 55 A.L.R.3d 925] (relief granted where plaintiff's counsel, retained on the 82d day after the accrual of the cause of action, failed to open a file which would have reminded them of the 100-day limitation). (Cf. *Viles, supra,* 66 Cal.2d 24, in which this court granted relief on the basis of mistake and excusable neglect where a plaintiff, relying on the advice of insurance representatives, thought he had one year to file an action; we determined that plaintiff acted with reasonable diligence in filing an application for leave to file a late claim.)

[10]See, e.g., *Rivera* v. *City of Carson, supra,* 117 Cal.App.3d 718 (relief denied where injured plaintiff made deliberate decision not to comply with the claim requirement pending outcome of criminal proceedings against him); *Bennett* v. *City of Los Angeles* (1970) 12 Cal.App.3d 116 [90 Cal.Rptr. 479] (relief denied where parents of minor child killed by collapsing cement wall owned by the city did not consult an attorney until 119 days after the accrual of their cause of action); *Martin* v. *City of Madera* (1968) 265 Cal.App.2d 76 [70 Cal.Rptr. 908] (relief denied where plaintiff, a businessman presumably accustomed to dealing with legal matters, alleged he became ill after drinking contaminated city water but did not file a claim until 11 months later).

[11]See, e.g., *Leake* v. *Wu* (1976) 64 Cal.App.3d 668 [134 Cal.Rptr. 616] (relief denied where plaintiff's counsel, retained within three weeks of the accrual of the cause of action, did not make any inquiry to determine that the defendant named in plaintiff's complaint was a public employee); *Hasty* v. *County of Los Angeles* (1976) 61 Cal.App.3d 623 [131 Cal.Rptr. 347] (relief denied where plaintiff's counsel delayed two months after completion of his investigation in filing an application for leave to file a late claim); *Black* v. *County of Los Angeles* (1970) 12 Cal.App.3d 670 [91 Cal.Rptr. 104] (relief denied where plaintiff's counsel, retained 10 days after the accrual of the cause of action, failed to obtain a California Highway Patrol report of the accident in which plaintiff was injured, which would have revealed a possible cause of action against the county; the court reasoned that the existence of such reports is commonly known to lawyers and laypersons alike); *Shaddox* v. *Melcher* (1969) 270 Cal.App.2d 598 [76 Cal.Rptr. 80] (relief denied where plaintiff's counsel, retained within 100 days after the accrual of the cause of action, failed to make an obviously reasonable inquiry to obtain a California Highway Patrol report which would have revealed a possible cause of action against the state).

The only Supreme Court decision denying relief under section 946.6 is *Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468. In that case the application was filed 10½ months after the alleged wrongful death occurred, although counsel had been retained within 2 weeks

which there was simply no competent evidence before the trial court upon which it could exercise its discretion.[12] None of these situations exists here. Rather, as in previous cases granting relief on the basis of excusable neglect, Ms. Ebersol acted diligently to retain legal counsel within the 100-day limitation period.

 In the present case, Ms. Ebersol acted swiftly to place her case in the hands of an attorney on the very day she was injured. Thereafter, despite repeated rebuffs by the attorneys she contacted, Ms. Ebersol continued to seek legal advice and assistance. Despite her physical pain, the progressive deformity of her left hand, her frequent and prolonged admissions to the hospital, and her frequent outpatient medical treatments, Ms. Ebersol continued her search. Clearly, Ms. Ebersol's efforts to obtain counsel during the 100-day limitation period were both tenacious and diligent.

The County asserts that diligent efforts to obtain legal counsel within the 100-day limitation period provide an insufficient basis for granting relief from the claim presentation requirement. The County argues that relief must be based on the claimant's diligent efforts to ascertain the pertinent facts of his or her case. Thus, the County maintains that relief cannot be granted in the present case because Ms. Ebersol made no efforts to discover its identity within the 100-day period. The County relies, as did the trial court, on *City of Fresno, supra,* 104 Cal.App.3d 25, 32. The County, and presumably the trial court, rely on the following language in *City of Fresno*: "A petitioner or his attorney must show more than that he just failed to discover a fact until too late; they must establish in the use of reasonable diligence they failed to discover it. (*Black* v. *County of Los Angeles, supra,* 12 Cal.App.3d 670, 677.)" (*Ibid.*)

This reliance on *City of Fresno* is misplaced. In that case, the plaintiff was beaten and robbed in the area of an underground garage prominently marked as reserved for guests of the hotel in which he was a registered guest and served by an elevator to that hotel. Plaintiff's counsel filed a complaint for personal injuries against the hotel and other private defendants

---

following the death. Under the 1963 Tort Claims Act the cause of action was deemed to have accrued at a time later than the date of death, and thus it was determined claimant's action was only eight days late. We held, however, that the total delay of 10½ months refuted claimant's contention that through the exercise of reasonable diligence she had not had adequate time to discover that the state was responsible for the maintenance of the highway where her husband's death occurred.

[12]*El Dorado Irrigation Dist.* v. *Superior Court* (1979) 98 Cal.App.3d 57 [159 Cal.Rptr. 267] (the trial court had no evidentiary basis on which to exercise its discretion where plaintiff did not consult counsel until 120 days after the accrual of the cause of action and where, subsequently, counsel's investigator did not report the public nature of the alleged defendant until 7 months later).

120 days later. The hotel subsequently cross-complained for indemnity against the City of Fresno and the Parking Authority of the City of Fresno. Plaintiff's counsel then sought to file a late claim with the City of Fresno, which was denied.

Through new counsel, plaintiff filed a petition for relief from the claim requirement. The only evidence presented in support of the petition was a declaration of plaintiff's former counsel indicating that the first knowledge he had that the City of Fresno and its parking authority were potential defendants was when he was served with the cross-complaint. On this basis, the trial court granted relief.

The City of Fresno and its parking authority successfully sought from the Court of Appeal a peremptory writ of mandate directing the trial court to vacate its order. In the absence of competent evidence as to when plaintiff had consulted his first attorney, the Court of Appeal assumed that counsel had been retained prior to the running of the 100-day limitation period.[13] The court held that counsel's failure to file a timely claim against the public entities could not be attributed to mistake, inadvertence, surprise, or excusable neglect. It reasoned that counsel had conducted no investigation whatsoever to ascertain the possible defendants that should have been joined in his client's suit. Neither counsel nor his investigator had visited the scene of the injury, which would have disclosed that the lower levels of the garage were public parking areas maintained by the City of Fresno. Moreover, had the attorney or his investigator discussed, or made a written inquiry into, the situation with either the hotel or the Fresno Police Department, such efforts would probably have disclosed the ownership of the parking facility.

Thus, the *City of Fresno,* unlike the present case, is similar to those cases where relief has been denied due to the inexcusably dilatory conduct of plaintiff's counsel.[14] (See fn. 11, *ante,* at pp. 436-437, and accompanying text.) *Black* v. *County of Los Angeles, supra,* on which *Fresno* relies, is similarly distinguishable. In *Black,* counsel was retained within 100 days

---

[13]Had the 100-day period run prior to plaintiff consulting counsel, the writ would have been automatically granted. There would have been nothing before the court upon which it could exercise its discretion. (*City of Fresno, supra,* at p. 31.)

[14]As Ms. Ebersol points out, the rule of imputing a neglectful attorney's actions to the represented party relies in part on the availability of a remedy to the injured client. The client may bring an action against the neglectful attorney to recover damages. (See, e.g., Code Civ. Proc., § 340.6.) However, no malpractice suit can lie against an attorney who refuses to accept a case and it would therefore be unjust to characterize such refusals as inexcusable neglect imputable to the client. Moreover, the unavailability of an alternative remedy for legally unrepresented clients requires that we examine with even greater scrutiny those instances in which such clients are denied relief from the claim presentation requirement.

after the accrual of the cause of action but through his inexcusably dilatory conduct failed to obtain a California Highway Patrol report which would have revealed a possible cause of action against the subject public entity. (Cf. *Tsingaris* v. *State of California* (1979) 91 Cal.App.3d 312, 314 [154 Cal.Rptr. 135].) These cases do not require claimants to undertake their own factual investigations, but indicate that in order to obtain relief under section 946.6 on the basis of excusable neglect, the claimant must at a minimum make a diligent effort to obtain legal counsel within 100 days after the accrual of the cause of action. Once retained, it is the responsibility of legal counsel to diligently pursue the pertinent facts of that cause of action in order to identify possible defendants.

Ms. Ebersol properly sought to retain legal counsel to pursue her claim rather than undertake an independent investigation of the facts and the law of her own case. Given that nine attorneys told her she had no claim, it could not reasonably be expected that Ms. Ebersol would undertake, or should have undertaken, her own legal or factual investigation. As set forth in her declaration, Ms. Ebersol had no prior experience with claims for personal injuries, nor was she aware of the claim requirement against governmental entities. Ms. Ebersol did not know or have reason to know that the County operated the work training program at the Camarillo Air Base. This fact would not be reasonably apparent to, or anticipated by, the average layperson. As Ms. Ebersol points out, an initial awareness and understanding of the possible basis for recovery in *Tarasoff* is required even before an inquiry into agency responsibility would be made. The reasonable and prudent course of conduct under the circumstances of this case was to seek legal counsel. Accordingly, we conclude that the failure of Ms. Ebersol to timely file a claim against the County constituted excusable neglect.[15]

The County argues that the uncontradicted nature of the evidence is not a sufficient reason to grant relief in this case. ■ While it is true that a trier of fact may disbelieve uncontradicted evidence, such evidence cannot be arbitrarily disregarded. (*Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, 477.) The County would apparently have us disbelieve that Ms. Ebersol made repeated attempts to retain legal counsel and, further, that her failure to independently identify the County as the agency responsible for operating the work training program was unreasonable. The County has not submitted any declarations or other factual basis for disbelieving the prof-

---

[15]Compare *Whitfield* v. *Roth, supra,* 10 Cal.3d 874 which held that the statute of limitations with respect to a medical malpractice action commenced to run when the plaintiff, through the exercise of reasonable diligence, obtained through counsel the medical record which revealed her cause of action; plaintiff's conduct in contacting two attorneys who would not accept her case and finally persuading a third attorney to take her case constituted reasonable diligence.

fered evidence. We are not therefore persuaded that we should disregard any of the evidence submitted by Ms. Ebersol. To do so, we believe, would be arbitrary.

■ Where, as here, plaintiff's excusable neglect was the actual cause of her failure to comply with the 100-day requirement, and her application to the County could obviously not be made until she discovered that she had a possible cause of action, the delay of less than one year after the accrual of the cause of action was reasonable under the circumstances. (*Viles, supra,* 66 Cal.2d 24, 32.)

The order of the trial court is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Grodin, J., concurred.

**BIRD, C. J.**—I concur in Justice Reynoso's opinion for the court. However, I would rest the holding on the equal protection guarantee of the California Constitution.[1]

It is the general policy of the State of California to provide protection from negligence to everyone. (Civ. Code, § 1714; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 870 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) The California courts have not hesitated to overturn arbitrary classifications affecting tort recoveries, applying both common law (see, e.g., *Rowland, ibid.*; *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 213-217 [11 Cal.Rptr. 89, 359 P.2d 457]; *Malloy* v. *Fong* (1951) 37 Cal.2d 356, 364-367 [232 P.2d 241]) and constitutional doctrines (see, e.g., *Brown* v. *Merlo, supra,* 8 Cal.3d at pp. 864-883; *Cooper* v. *Bray* (1978) 21 Cal.3d 841, 848-855 [148 Cal.Rptr. 148, 582 P.2d 604]; *Monroe* v. *Monroe* (1979) 90 Cal.App.3d 388, 391-392 [153 Cal.Rptr. 384]; *Ayer* v. *Boyle* (1974) 37 Cal.App.3d 822, 826-828 [112 Cal.Rptr. 636]).

---

[1]This guarantee is contained in three provisions. Article I, section 7, subdivision (a) provides in part: "A person may not be . . . denied equal protection of the laws . . . ." Article I, section 7, subdivision (b) states in part: "A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens." Article IV, section 16, subdivision (a) provides: "All laws of a general nature have uniform operation."

The legislation at issue here creates two classes of tort victims: (1) those injured by private parties, and (2) those injured by governmental entities. The first class may file a claim any time within the full period permitted by the general limitations statutes—i.e., from one to four years from the accrual of the cause of action, depending upon the type of action brought. (See, e.g., Code Civ. Proc., §§ 338, 339, subd. 1, 340, subd. (3), 343.) The second class must present a claim to the governmental tortfeasor not later than the 100th day after the accrual of the cause of action (Gov. Code, § 911.2), or face forfeiture of relief at the discretion of the tortfeasor (Gov. Code, §§ 945.4, 911.4).[2]

This court has recognized that "[t]he rule of governmental immunity for tort is an anachronism, without rational basis . . . ." (*Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d at p. 216; but see *Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520, 524-525 [41 Cal.Rptr. 190].) A sweeping distinction between victims of governmental and private torts makes no more sense with regard to onerous procedural requirements than with regard to governmental immunity. "A [person's] life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law" (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 118) merely because his or her injury was caused by governmental as opposed to private negligence.

In *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 481 [58 Cal.Rptr. 249, 426 P.2d 753], this court upheld the claims presentation requirements without discussion. Recent appellate decisions upholding the requirements have added little or no analysis.[3] I would overrule *Tammen* and invalidate the claims presentation requirements as violative of the equal protection guarantee.

---

[2]The injured person may obtain judicial relief from this requirement, but only if: (1) his or her failure to meet the 100-day limit was due to mistake, inadvertence, surprise, or excusable neglect, (2) the injured person was a minor or was physically or mentally incapacitated throughout the 100-day period, or (3) the injured person died before the expiration of the 100-day period. (Gov. Code, § 946.6.)

[3]See, e.g., *Maisel* v. *San Francisco State University* (1982) 134 Cal.App.3d 689, 695 [184 Cal.Rptr. 694]; *Tsingaris* v. *State of California* (1979) 91 Cal.App.3d 312, 315 [154 Cal.Rptr. 135]; *Smith* v. *City and County of San Francisco* (1977) 68 Cal.App.3d 227, 230 [137 Cal.Rptr. 146]; *Carr* v. *State of California* (1976) 58 Cal.App.3d 139, 142-143 [129 Cal.Rptr. 730].