[Civ. No. 33352. Fourth Dist., Div. Two. Jan. 16, 1985.]

GAYLE MITCHELL, Plaintiff and Appellant, v.
DEPARTMENT OF TRANSPORTATION et al.,
Defendants and Respondents.

COUNSEL

J. Robert Dempster and William R. Seligmann for Plaintiff and Appellant.

Robert F. Carlson, Joseph A. Montoya, Robert L. Meyer, Michael J. Gittleman, John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Jeffrey T. Miller and Kristin G. Hogue, Deputy Attorneys General, Kern & Wooley and Ralph S. LaMontagne, Jr., for Defendants and Respondents.

OPINION

**RICKLES, J.**—Plaintiff's petition for relief from the claim presentation requirements of Government Code section 945.4[1] and the demurrers to

---

[1]Unless otherwise indicated, all section references in this opinion are to the Government Code.

plaintiff's complaint by the governmental entities were calendared for hearing on the same date. The trial court denied plaintiff's petition to be relieved from the claim filing requirements. This ruling required the trial court to sustain the demurrers without leave to amend. Plaintiff petitioned the trial court to reconsider these rulings. The trial court granted plaintiff's motion to reconsider and after reconsideration, declined to change its ruling. Plaintiff appeals.

## FACTS

On September 3, 1982, plaintiff was a passenger in a Ford automobile involved in an accident on Interstate Highway 15 in the County of San Bernardino. Plaintiff and her friends were on their way to the US Festival Rock Concert to be held at Glen Helen Regional Park in that same county. The Ford carrying plaintiff was stopped behind a long line of vehicles. Plaintiff's vehicle was rear ended by an uninsured motorist. Plaintiff sustained personal injuries as a result of the accident.

Plaintiff's father contacted Attorney Theodore Kitt about the possibility of representing his daughter. Mr. Kitt advised plaintiff's father there appeared to be no basis for a cause of action against the public entities. After reviewing the highway patrol report of the accident, Mr. Kitt determined he would not pursue nor did he contemplate any legal action against any public entity. Plaintiff was told by her father that Mr. Kitt was of the opinion that she could only make a claim against the driver of the adverse car and possibly against Ford Motor Company.

Plaintiff personally met with Mr. Kitt on September 29, 1982. Plaintiff knew after this meeting that Mr. Kitt did not intend to pursue the public entities.

Mr. Kitt arranged for and settled the uninsured motorist claim for the $15,000 policy limits.

On December 29, 1982, the 100-day time period for filing claims against the public entities expired. Plaintiff retained her present attorney Mr. Dempster on July 28, 1983. Plaintiff employed Mr. Dempster after she learned that he was pursuing claims against public entities on behalf of others involved in the same accident.

## PROCEDURAL POSTURE

Plaintiff's first attorney failed to file a claim with the government entities within 100 days. (§ 911.2.)

Plaintiff's second attorney filed applications with the public entities for leave to present a late claim 11 months after the accident on August 4, 1983. (§ 911.4.) These claims were denied or deemed denied by the passage of time. (§ 911.6.)

Plaintiff filed her complaint against the governmental entities on September 9, 1983.

Plaintiff filed a petition for relief from the claim filing requirements with the superior court on October 7, 1983. (§ 946.6.)

The governmental entities filed objections to the petition for relief from claim filing requirements and demurrers to plaintiff's complaint.

Plaintiff's petition for relief from claim filing requirements was denied and the governmental entities' demurrers were sustained without leave to amend on December 15, 1983.

Plaintiff's petition for rehearing was heard on the merits and orally denied by the trial court on January 12, 1984. This denial was confirmed by written order on January 17, 1984.

Plaintiff's notice of appeal dated February 2, 1984, purported to appeal from the court's order sustaining the public entities' demurrers without leave to amend on December 15, 1983, and the January 12, 1984, order denying plaintiff's relief from the claim filing requirements.[2]

## DISCUSSION

This appeal presents a single question for review. Did the trial court abuse its discretion in denying plaintiff's petition for relief from the claim presentation requirements of the Government Code?

---

[2]Defendant County of San Bernardino correctly contends that the December 15 order is technically nonappealable because no judgment of dismissal was entered. In the interest of justice and to prevent unnecessary delay, we will deem the orders to incorporate judgments of dismissal and will interpret plaintiff's notice of appeal as applying to the dismissal. Accordingly, the order sustaining the demurrers without leave to amend is modified by adding thereto a paragraph dismissing the actions. (*California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60].)

The county also contends, albeit unmeritoriously, that the order of January 12, 1984, is nonappealable. A reading of the January 12 transcript indicates the trial court denied the motion for reconsideration on the merits after considering additional affidavits. The written order of January 17, 1984, merely confirmed the earlier ruling. (See *Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1010-1011 [183 Cal.Rptr. 594].)

█ The determination of the trial court in granting or denying a petition for relief under section 945.6 will not be disturbed on appeal absent an abuse of discretion. (*Ebersol* v. *Cowan* (1983) 35 Cal.3d 427, 435 [197 Cal.Rptr. 601, 673 P.2d 271]; *Viles* v. *State of California* (1967) 66 Cal.2d 24, 28 [56 Cal.Rptr. 666, 423 P.2d 818].) This rule does not preclude reversal of an order denying relief where adequate cause for relief is shown by uncontradicted evidence or affidavit of petitioner, nor should it be employed to defeat the liberal policies of remedial statutes designed for that purpose. (*Ebersol* v. *Cowan, supra,* 35 Cal.3d at p. 435.) █ However, "[i]t is not the purpose of remedial statutes to grant relief from defaults which are the result of inexcusable neglect of parties or their attorneys in the performance of the latter's obligation to their clients." (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 478 [58 Cal.Rptr. 249, 426 P.2d 753].)

█ The showing required for relief under section 946.6 because of mistake, inadvertence, surprise or excusable neglect is the same as is required under Code of Civil Procedure section 473 for relieving a party from a default judgment. (*Ebersol* v. *Cowan, supra,* 35 Cal.3d at p. 435.)

█ "In general, a party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable 'because the negligence of the attorney . . . is imputed to his client and may not be offered by the latter as a basis for relief.' [Citation omitted.] The client's redress for inexcusable neglect by counsel is, of course, an action for malpractice. [Citations omitted.]

"However, an exception to this general rule has developed. '[E]xcepted from the rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct,* and the person seeking relief is relatively free from negligence. [Citations omitted.] The exception is premised upon the concept the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship,* and for this reason his negligence should not be imputed to the client.' (Italics added.) [Citations omitted.] Courts applying that exception have emphasized that '[a]n attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action or defense.'" (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 892, 654 P.2d 775]; original italics; fn. omitted.)

█ We examine the facts of our case to determine whether plaintiff's first attorney's failure to file a claim with the governmental entities constituted excusable neglect. Plaintiff hired her first attorney 26 days after the

accident occurred. Plaintiff and her attorney were aware of the following facts:

1. The accident occurred on Interstate 15;

2. The highway design is normally within the control of the state Department of Transportation;

3. The state highways are patrolled by the California Highway Patrol;

4. The rock concert plaintiff was to attend was located in the County of San Bernardino;

5. Plaintiff was on her way to this concert when the accident occurred; and

6. Plaintiff was advised by her attorney a cause of action against the governmental entities was not viable.

Plaintiff's attorney, furnished with this information and the additional information garnered from the accident report prepared by the highway patrol, made a legal determination plaintiff had no viable expectation of recovery from any of the governmental entities. Based upon this legal determination, plaintiff's first attorney did not file a claim against the governmental entities within the statutory period of time. Plaintiff's first attorney procured an uninsured motorist settlement for the policy limits and pursued a medical expense claim on behalf of the plaintiff. Approximately 11 months after the accident, plaintiff consulted her second attorney and the late claim was promptly filed.

Our examination of the cases indicates the trial court correctly determined that plaintiff's first attorney's failure to file a claim against the governmental entities was not due to excusable neglect. (See *Tammen* v. *County of San Diego, supra,* 66 Cal.2d at pp. 474-479; *Torbitt* v. *Fearn* (1984) 161 Cal.App.3d 860 [208 Cal.Rptr. 1]; *City of Fresno* v. *Superior Court* (1980) 104 Cal.App.3d 25, 32-35 [163 Cal.Rptr. 807]; *Leake* v. *Wu* (1976) 64 Cal.App.3d 668, 673 [134 Cal.Rptr. 616]; *Hasty* v. *County of Los Angeles* (1976) 61 Cal.App.3d 623, 626-627 [131 Cal.Rptr. 347]; *Clark* v. *City of Compton* (1971) 22 Cal.App.3d 522, 527-529 [99 Cal.Rptr. 613]; *Black* v. *County of Los Angeles* (1970) 12 Cal.App.3d 670, 674-677 [91 Cal.Rptr. 104]; *Shaddox* v. *Melcher* (1969) 270 Cal.App.2d 598, 601-602 [76 Cal.Rptr. 80].)

The above cited cases involved ignorance of the law, failure to research the law, failure to investigate, delay in completing investigation, failure to

procure police or accident reports and procrastination or delay in general by attorneys representing their respective plaintiffs. The case at bench presents more cogent reasons for denial of relief from the claim filing requirements than these cases. It demonstrates a conscious failure to file a claim against a governmental entity after making a legal determination no cause of action existed. This can hardly be said to be excusable neglect.

■ Having determined plaintiff's first attorney's failure to file a claim against the governmental entities did not amount to excusable neglect, plaintiff's hopes for recovery are based on the premise his counsel's actions amounted to positive misconduct and should not be imputed to her.

A brief look at the factual circumstances in cases which fall within the positive misconduct exception will make it clear that plaintiff's hopes are misplaced. The Supreme Court in *Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d 892, at pages 899-900, examined the three leading cases on positive misconduct by an attorney.[3] These three cases are bound together by a common thread not found here. They demonstrate a total failure on the part of counsel to represent the client to the extent that each attorney had de facto substituted himself out of the case.

The only positive misconduct by plaintiff's first attorney exists in the inventive mind of plaintiff's second attorney. Plaintiff's first attorney made a legal determination no cause of action existed against the public entities. There are no facts indicating he was wrong on this legal premise, and even if he was, this hardly constitutes positive misconduct. To apply the label of positive misconduct to the plaintiff's first attorney's action would run contra to the following caveat expressed in *Carroll*:

" 'The policy that the law favors trying all cases and controversies upon their merits should not be prostituted to permit the slovenly practice of law or to relieve courts of the duty of scrutinizing carefully the affidavits or declarations filed in support of motions for relief to ascertain whether they set forth, with adequate particularity, grounds for relief. [Fn. omitted.] When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law.' [Citation.] Given this concern, the *Daley* exception should be narrowly applied, lest negligent attorneys find that the simplest way to gain the twin goals of rescuing clients from defaults and themselves from malpractice liability, is to rise to ever greater heights of incompetence and

---

[3]*Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240]; *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 391-392 [38 Cal.Rptr. 693].

professional irresponsibility while, nonetheless, maintaining a beatific attorney-client relationship." (*Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d at p. 900.)

We find no abuse of discretion on behalf of the trial judge in denying plaintiff's petition for relief from late claim filing requirements and sustaining the demurrers without leave to amend.

Judgment affirmed.

Morris, P. J., and McDaniel, J., concurred.