Filed 4/10/15  Smith v. Dept. of Corrections and Rehabilitation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| LAWRENCE E. SMITH, | |
| Plaintiff and Appellant, | C074711 |
| v. | (Super. Ct. No. SCV0032798) |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Defendants and Respondents. | |

In 2006, Lawrence E. Smith spent eight days in jail for crimes actually committed by Joseph Kidd, who had stolen Smith's identity.  In 2011, Smith filed a claim with the California Department of Corrections and Rehabilitation (CDCR) before suing CDCR and Kidd's parole agent, Anthony Kaestner,[1] for damages.  After the California Supreme Court decided *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983 (*DiCampli-Mintz*), Smith dismissed his action in the superior court, and filed a claim with

---

[1]  Initially, erroneously sued as "Ketner."

1

the correct agency -- the Victim Compensation and Government Claims Board (Board) -- in January 2013. After the Board denied the claim, Smith filed a petition for filing a late claim in superior court. The superior court denied the petition for filing a late claim, and Smith appeals.

On appeal, Smith contends his petition for filing a late claim should have been granted on grounds (1) his claim was equitably tolled because the Supreme Court, in *DiCampli-Mintz, supra,* 55 Cal.4th 983, clarified the law regarding which agency should be served with a government claim, and (2) the "CDCR should be estopped from claiming that [Smith]'s claim was deficient" due to the representations made by the Attorney General's office.

We conclude Smith presented his 2011 claim to the wrong government agency. Even if Smith had presented the claim to the correct government agency in 2011, it would have been untimely. Consequently, we need not consider whether the issuance of *DiCampli-Mintz* somehow tolled the claim from 2011 to 2013. We also need not consider Smith's tolling and estoppel contention because the representations upon which he focuses were made in 2011 and 2012 -- when his claim was already time barred. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The undisputed facts show Smith was arrested and jailed for eight days in 2006 because Joseph Kidd had committed crimes using Smith's identity. However, Smith did not file his claim with CDCR until March 2011. Smith's only explanation for the five-year delay was that "[i]n early 2011, through payment records sent to Kidd's estranged wife and provided to Smith, he first learned that it was Joseph Kidd who had stolen his [i]dentity." In June 2011, Smith filed a complaint against CDCR and Kidd's parole agent. Smith's complaint does not include any information that Smith attempted to find the person responsible for damages arising out of the theft of his identity during the five years before Smith's March 2011 claim to CDCR.

2

After the California Supreme Court decided *DiCampli-Mintz* in December 2012, Smith dismissed his initial lawsuit, and then filed a claim and request to file a late claim with the Board in January 2013. After the Board denied the claim and request to file a late claim, Smith filed a petition for filing a late claim in superior court in April 2013.

In his petition for filing a late claim, Smith argues that based upon the substantial compliance doctrine, his original claim to CDCR was timely filed. He asserts the state appellate courts were split on the issue of whether the substantial compliance doctrine allowed service of a claim against a state agency on the state agency itself, and relies upon the 1973 case of *Jamison v. State of California* (1973) 31 Cal.App.3d 513 (*Jamison*) to support his substantial compliance argument. He states this split was resolved by the *DiCampli-Mintz* decision, which held that claims against the state must be filed with the Board. Smith also argues the state should be equitably estopped from asserting noncompliance with the claims presentation statutes because the state's attorneys sought extensions during the litigation until the time had passed to file a timely claim, and then filed a motion for summary judgment. Finally, Smith asserts he did not lack diligence in pursuing his claim during the passage of time while the California Supreme Court clarified the issue of where claims against the state must be filed.

The trial court denied the petition for filing a late claim. The court found Smith's confusion surrounding his attempt to file a claim does not excuse the burden upon him to present a timely claim with the appropriate governmental agency, and noted the events for which Smith sought relief arose nearly seven years before, in 2006. The trial court further found Smith "did not present a claim to the [Board], the appropriate governmental agency in this case, until over two years after filing the complaint in the prior dismissed case, Smith v. California Department of Corrections, SCV-29360. He has failed to sufficiently show the applicability of estoppel in this case as the actions petitioner contends were taken by defendants do not rise to the level of affirmative acts that prevented or deterred [him] from filing a claim."

3

DISCUSSION

**I**

***Government Claims Act Deadline for Tort Claims***

Smith argues the trial court erred in denying his petition to file a late claim. In so arguing, Smith focuses almost exclusively on the events occurring after 2011. He does not assert he investigated his claim with any diligence during the five years before 2011. We conclude Smith's claim expired during the five years prior to his first filed claim with CDCR.

**A.**

***Government Claims Act***

Under the Government Claims Act (Gov. Code, § 900 et seq.)[2], all claims of personal injury for which a government agency is responsible must be filed within six months after the cause of action accrues. (§ 911.2, subd. (a).) This six-month time limit applies to negligence and intentional torts. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1238-1239.) Because the time limit of section 911.2, subdivision (a), is mandatory, failure to timely file a claim bars a late claim. (*Id.* at p. 1239.) As the California Supreme Court has explained, "the intent of the Government Claims Act is 'not to expand the rights of plaintiffs against government entities. Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances.' (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1242–1243.)" (*DiCampli-Mintz, supra,* 55 Cal.4th at p. 991.) In addition to filing a timely claim, "[t]he claimant bears the burden of ensuring that the claim is presented to the appropriate public entity." (*Ibid.*)

---

[2]      Undesignated statutory references are to the Government Code.

The trial court may grant a petition to file a late claim only if the claimant can "demonstrate by *a preponderance of the evidence* both that the application to the public entity for leave to file a late claim was presented within a reasonable time *and* that the failure to file a timely claim was due to mistake, inadvertence, surprise or excusable neglect. (*Shank v. County of Los Angeles* (1983) 139 Cal.App.3d 152, 156.) [¶] The mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient to warrant relief. Relief on grounds of mistake, inadvertence, surprise or excusable neglect is available only on a showing that the claimant's failure to timely present a claim was reasonable when tested by the objective 'reasonably prudent person' standard. The definition of excusable neglect is defined as 'neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances.' (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435.) [¶] There must be more than the mere failure to discover a fact; the party seeking relief must establish the failure to discover the fact in the exercise of reasonable diligence. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1783.) The party seeking relief based on a claim of mistake must establish he [or she] was diligent in investigating and pursuing the claim (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276) and must establish the necessary elements justifying relief by a preponderance of the evidence. (*Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 717.)" (*Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293.)

## B.

### *Smith Filed his Claim with the Wrong Government Agency*

When Smith filed his claim in 2011, he served the wrong government agency. At all times, section 915, subdivision (b), required a claim against the state to be filed with

5

the Board.[3]  It is clear Smith did not comply with the express filing requirements of the statute.  Instead, Smith relies on the 1973 *Jamison* decision to argue he substantially complied with the filing requirements of the government claims statute.  He asserts there was a split among the state appellate courts and cites to two cases:  *Jamison* and *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761 (*Del Real*).  However, *Del Real* is a later case decided by the same appellate court and division as *Jamison.*  In *Del Real*, the same division of the same court stated it reconsidered its earlier decision in *Jamison* and declined to follow it.  (*Id*. at p. 770.)  Since the *Jamison* holding was repudiated by its own panel, Smith's reliance on *Jamison* is misplaced.  Further, Smith's reliance on the California Supreme Court's decision in *DiCampli-Mintz* is misplaced.  *DiCampli-Mintz* involved the presentation of a claim to a local public entity under section 915, subdivision (a), not a state agency under section 915, subdivision (b).  The court relied upon the plain language of the government claims statute to conclude a claim against a public entity must satisfy the express delivery provisions language of the statute.  Thus, a misdirected claim will satisfy the presentation requirement only if the claim is "actually received" by the statutorily designated entity.  (*Id.* at p. 996.)

The language of section 915, subdivision (b), is clear and unambiguous:  a claim against the state must be filed with the Board.  Here, Smith filed his 2011 claim with the wrong government agency and there is no evidence in the record the Board "actually received" the 2011 claim filed with CDCR.

In sum, based on the express language of the statute and the existing case law in 2011, Smith should have filed the claim with the Board, not CDCR.

---

[3]     Section 915, subdivision (b), states in pertinent part that "a claim, any amendment thereto, or an application for leave to file a late claim shall be presented to the state by either of the following means:  (1) Delivering it to an office of the Victim Compensation and Government Claims Board.  (2) Mailing it to the Victim Compensation and Government Claims Board at its principal office."

## C.

### *Smith's Claim is Untimely*

Section 911.2, subdivision (a), states all claims for personal injury, including death, must be filed within six months after the cause of action accrues. While Smith alleges he did not know Joseph Kidd's identity until 2011, his claim accrued in 2006 when he found out he was a victim of identity theft. (See *Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42 [claim accrued at time client has reason to suspect the public defender's negligence was proximate cause of convictions, not at the time the convictions were set aside in habeas corpus proceeding].)

Smith's petition for filing a late claim does not describe any diligence in seeking to discover the responsible party who caused Smith's erroneous incarceration in 2006. The record is silent as to any efforts Smith might have made in the five years before his claim to CDCR in 2011. Even the events alleged to have occurred in 2011 indicate no diligence insofar as documents were merely "provided to Smith" about Kidd's theft of Smith's identity. Because Smith does not show any effort to discover who was responsible for his incarceration and other damages, the Government Claims Act time limitation expired *years* before the 2011 claim was filed with CDCR. (§ 911.2, subd. (a); *Department of Water & Power v. Superior Court*, *supra*, 82 Cal.App.4th at p. 1293.) Even if Smith had filed his claim with the correct government agency in 2011, it would have been untimely.

## D.

### *Tolling and Equitable Estoppel*

We need not decide whether the time between dismissal of his first lawsuit and subsequent service of the correct governmental agency was subject to tolling under *DiCampli-Mintz, supra,* 55 Cal.4th 983. By the time the California Supreme Court decided *DiCampli-Mintz* in 2012, Smith's claim was already untimely under section 911.2, subdivision (a). Our conclusion also obviates the need to consider whether any

representations by the Attorney General's office in 2011 and 2012 estop the government because Smith's claim was already time barred.

DISPOSITION

The order denying the petition to file a late claim is affirmed.  Respondents shall recover their costs, if any, on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      HOCH     , J.


We concur:


      BLEASE     , Acting P. J.


      BUTZ     , J.