Filed 10/21/22  Iovino v. JP Morgan Chase Bank, N.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GREGORY IOVINO, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JP MORGAN CHASE BANK, N.A. et al., <br><br> Defendants and Respondents. | D079479 <br><br><br> (Super. Ct. No. 37-2020-00031690-CU-OR-NC) |


APPEAL from judgments of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Law Offices of Ronald H. Freshman and Ronald H. Freshman, for Plaintiff and Appellant Gregory Iovino.

Davis Wright Tremaine, Mary H. Haas, and Frederick A. Haist, for Defendant and Respondent JPMorgan Chase Bank, N.A.

Kirby & McGuinn, Jana Logan, and Matthew H. Aguirre, for Defendants and Respondents Rushmore Loan Management Services, LLC and U.S. Bank, N.A., as Legal Title Trustee for Truman 2016 SC6 Title Trust.

## INTRODUCTION

Plaintiff Gregory Iovino purchased property in Escondido in 2007 and entered a loan agreement with Washington Mutual Bank, FA (WaMu). After WaMu failed in 2008 and the Federal Deposit Insurance Corporation (FDIC) took over as receiver, it conveyed WaMu's assets to JP Morgan Chase, N.A. (Chase). In 2019, Chase assigned the deed of trust to U.S. Bank, N.A. (US Bank), as trustee for Truman 2016 SC Title Trust. In 2020, Rushmore Management Services, LLC (Rushmore), acting as US Bank's attorney in fact, sold the property at public foreclosure.

In 2020, Iovino filed a verified complaint alleging wrongful foreclosure and violations of Civil Code sections 2924f and 3412 and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq), and he sought damages, an order to set aside the trustee sale, and a declaration quieting title. Among other things, he alleged that the transfers from WaMu to Chase and from Chase to US Bank were void.

Chase demurred, and Iovino opposed the motion. The court granted that demurrer without leave to amend and entered judgment in favor of Chase. Iovino moved to vacate the judgment under Code of Civil Procedure sections 657 and 659, arguing newly-discovered evidence justified permitting him to amend the complaint. The court denied the motion.

US Bank and Rushmore demurred to the complaint separately from Chase, and Iovino failed to timely oppose their demurrer, so the court sustained it and entered judgment in favor of US Bank and Rushmore. Iovino moved to vacate the judgment under Code of Civil Procedure section 473, arguing he had moved and did not receive the demurrer before the hearing date. The court denied the motion to vacate the judgment.

On appeal, Iovino argues the court should have taken his status as a self-represented litigant into account, and the failure to do so led the court to improperly sustain both demurrers without leave to amend. He contends he can amend the complaint to allege additional causes of action. He also contends the court abused its discretion by failing to vacate the judgment in favor of US Bank and Rushmore because his failure to respond to their demurrer was excusable.

We conclude the trial court properly sustained the demurrers. We further conclude the court did not abuse its discretion when it found that Iovino did not demonstrate excusable mistake or neglect in failing to respond to US Bank and Rushmore's demurrer. Accordingly, we affirm the judgments.

BACKGROUND AND PROCEDURAL FACTS

Iovino purchased property at Slivkoff Drive in Escondido, California on July 5, 2007. The deed of trust was recorded July 10, 2007. It identified Iovino as the borrower, WaMu as the beneficiary, and California Reconveyance Company as the trustee. It granted the lender the right to appoint a successor trustee.

At some point in 2008, WaMu failed. The FDIC was appointed as receiver.

*The 2011 Lawsuit*

In February 2011, Iovino filed suit against Chase and California Conveyance Company in San Diego County Superior Court, case No. 37-2011-00051823-CU-OR-NC. It alleged 16 causes of action, including declaratory relief, slander of title, breach of the implied covenant of good faith and fair dealing, rescission for violating Civil Code section 1916.7, cancellation due to misrepresentations, unfair business practices, breach of fiduciary duty in

3

violation of Civil Code section 2924f, quiet title, and fraud. In that complaint, Iovino alleged that the companies had engaged in predatory lending practices, that attempts to modify the loan terms had been rejected, and that the banks were pushing to foreclose on February 25, 2011. He claimed WaMu never assigned its beneficial interest to Chase, and he challenged the validity of the loan and promissory note, as well as the deed of trust. He contended that the power of sale contained in the deed of trust held no force because the defendants' security interest in the property had been rendered void, and he sought reconveyance. He also sought to void the mortgage contract on the basis of impossibility and unconscionableness.

Chase and California Reconveyance moved for summary judgment, which the court granted. The court entered judgment in favor of Chase and California Reconveyance and dismissed the matter. Iovino did not appeal.

*Chain of Title*

On November 18, 2014, a corporate assignment of deed was recorded memorializing an assignment and transfer of the deed of trust from the FDIC (acting as the receiver for WaMu) to Chase that had occurred on September 25, 2008.[1] The document was signed by a Chase vice president and notarized with an acknowledgement in Louisiana, where Chase was located.

On May 31, 2016, a notice of default was recorded in the San Diego County Recorder's office. The recording was requested by First American Mortgage Solutions, and the document identified MTC Financial, which does business as Trustee Corp, as the agent of the trustee or beneficiary. It stated that Iovino had not paid on his mortgage since January 1, 2016, and that he

---

[1] The document states the transfer occurred by operation of law, as authorized by the Federal Deposit Insurance Act, title 12 United States Code section 1821(d)(2)(G)(i)(II).

4

owed $12,191.95 as of May 27, 2016.[2]  Attached to the notice of default was a declaration of compliance, signed by a Chase representative on May 17, 2016, which stated the company had given the homeowner 30 days' notice.  Iovino alleges he was never given proper notice, and he was not contacted to assess his financial situation to avoid foreclosure.

In April and August 2018, Iovino filed for bankruptcy.  Notice was provided to Chase and Trustee Corps both times.

On September 24, 2019, a corporation assignment of deed of trust was recorded with the San Diego County Recorder.  In it, Chase assigned to US Bank, as trustee for Truman 2016 SC Title Trust, its interest.

Iovino filed for bankruptcy in January 2020.[3]

On May 28, 2020, US Bank recorded a notice substituting as trustee Attorney Lender Services (ALS) for California Reconveyance Company.  The notice was signed March 17, 2020, by US Bank as trustee for Truman 2016 SC Title Trust by Rushmore Loan Services, LLC (Rushmore), its attorney in fact.  An affidavit stated the notice of substitution had been sent by certified and first class mail to Iovino on May 22, 2020.

Also on May 28, 2020, ALS recorded a notice of trustee sale set for June 29, 2020.  Iovino's complaint alleges he did not know a deed of sale was happening; he received no notice.

---

[2]    The notice also directed Iovino to contact Chase c/o MTC Financial Inc., doing business as Trustee Corp to address payment and stop the foreclosure, or for any reason if the property was in foreclosure.

[3]    The address listed with the Bankruptcy Noticing Center for the 2018 bankruptcy filings was the Slivkoff Drive address.  The address provided on the third filing was Hawk Drive.

On June 23, 2020, Lisa Ellsworth, an employee of Lugash Law Center, contacted Rushmore on Iovino's behalf and spoke with an employee there named "Shiva" who confirmed there was no scheduled foreclosure sale.

On June 25, 2020, Ellsworth called Rushmore again, and Shiva again said she had completed Iovino's loan modification request file and placed it in review status, so there was no pending foreclosure sale. Ellsworth also contacted Trustee Corp; an employee told her the foreclosure sale scheduled for June 29 had been canceled.

On June 29, 2020, Ellsworth called Rushmore and spoke with an employee named Esmerelda who informed her that Iovino's property had gone to foreclosure sale that morning. Esmerelda told Ellsworth there was no documentation showing the sale should not have proceeded, and she said Iovino had been mailed a notice of the trustee's sale.

On June 29, 2020, ALS conveyed legal title to US Bank as trustee for Truman 2016 SC Title Trust the property at Slivkoff Drive. Rushmore recorded the sale with the San Diego County Recorder's office on July 8, 2020.

*The Current Lawsuit*

Iovino filed a verified complaint September 10, 2020, listing seven causes of action: (1) wrongful foreclosure against WaMu, Chase, and US Bank; (2) violation of Civil Code section 3412 against WaMu and US Bank; (3) quiet title against WaMu, Chase, and US Bank; (4) violation of Civil Code, section 2924f, against Chase and ALS; (5) violation of Civil Code, section 2923.5 against Chase, US Bank, and ALS; (6) violation of Business and Professions Code, section 17200 for unfair business practices against all defendants; and (7) a request for injunctive relief.

6

Iovino alleges WaMu securitized the note and sold it before 2008, so his loan was not a part of the FDIC receivership sale to Chase, and Chase never actually acquired the note. He further alleges the signatures on the corporate assignment of deed from the FDIC to Chase were forged, and because those documents were forged, Chase could not properly create the corporation assignment of deed of trust to transfer ownership interest to US Bank, and US Bank could not properly substitute ALS as the trustee.

*Defendant Chase*

Chase demurred to the complaint on April 30, 2021. Iovino opposed the motion, and Chase replied. On June 25, 2021, the court sustained the demurrer, and it entered judgment for Chase shortly thereafter.

In July 2021, Iovino filed a motion for new trial pursuant to Code of Civil Procedure sections 657 and 659, which permit a court to vacate and retry a matter when there is newly discovered, material evidence. (Code Civ. Proc., §§ 657, 659.) In it, he asked the court to set aside its dismissal of the action against Chase. He explained that prior to 2020, the FDIC was not able to identify which loans were sold to Chase because it was not clear which loans WaMu retained ownership of and which loans it sold but continued to service. However, a new, searchable FDIC database suggested Iovino's loan was not part of the FDIC transaction with Chase because it does not appear in the public securitization transactions. Further, he argued that the FDIC did not retain any interest to transfer six years after the transaction occurred. Because Chase never acquired the loan, it could not later transfer any interest to US Bank.

Iovino reiterated that he had not received actual notice of a new creditor or of the trustee sale, and that while his Homeowner's Bill of Rights (HBOR) dual tracking claim was misplaced, the facts nonetheless properly

7

alleged a UCL claim because the foreclosure had progressed during a time when the servicer was reviewing a completed modification application and assuring Iovino the sale would not go forward.

He also argued that because he is a pro. per. litigant, he did not "know or understand . . . the proper manner in which to articulate his claims, or the proper procedure for responding to any responsive or dispositive motions filed by defendants," and California holds a self-represented litigant to less stringent pleading standards. He then clarified that he had pled facts sufficient for an intentional misrepresentation claim based on Chase's statement that the interest in Iovino's property was transferred from the FDIC to Chase, and that he had pled sufficient facts for a fraudulent concealment cause of action because Chase had concealed that the loan was not part of WaMu's assets when it failed.[4] He also articulated reasons he believed he alleged sufficient facts to support causes of action for UCL violations, slander of title, quiet title, and civil conspiracy.

Chase opposed the motion, explaining that Iovino failed to satisfy the newly-discovered evidence ground, and the newly-identified causes of action likewise failed.[5]

The court denied the motion, explaining the new theories for resurrecting the claims adjudicated by the demurrer were barred by res judicata and collateral estoppel.

---

[4]     Chase filed objections to portions of the declarations supporting these claims, and the court sustained these objections.

[5]     The court granted Chase's request for judicial notice of the 2011 complaint, the 2012 minute order requesting judicial notice of the 2011 complaint, the 2012 judgment, the 2011 case docket for the suit between Iovino and Chase, and Iovino's bankruptcy petitions.

*Defendants Rushmore and US Bank*

Rushmore and US Bank demurred to the complaint in January 2021, with a hearing date set for April 30, 2021. They argued that the first, second, third, fifth, and sixth causes of action were uncertain and did not contain facts sufficient to meeting the pleading requirements.[6] Iovino did not timely file a responsive document, and the court sustained the demurrer without leave to amend and entered judgment dismissing the defendants on May 6, 2021.

In May 2021, Iovino moved to set aside the judgment pursuant to Code of Civil Procedure section 473, based on mistake, inadvertence, and excusable neglect. Iovino explained that he was self-represented, and he moved and filed a change of address with the United States Post Office around the time the demurrer was mailed, but he did not change his address with the court. He finally received the copy of the demurrer May 1, 2021, but because he did not understand the pleadings, he needed to seek legal counsel so he could appropriately respond. He attached to his motion a proposed opposition to the demurrer, in which he alternatively sought leave to amend the complaint.

US Bank and Rushmore opposed the motion.

The court denied Iovino's motion on June 25, 2021. It explained that Iovino was entitled to the same consideration as other litigants, but no greater consideration because he was acting in propria persona. It also concluded that Iovino provided "no persuasive reason for why he did not give the court and Defendants notice of his change of address between December 31, 2020 and April 28, 2021" or "why, despite his change of address, he

---

[6] The complaint does not name Rushmore or US Bank in the fourth cause of action for violation of Civil Code section 2924f. It names Rushmore only in the sixth cause of action, the UCL claim (Bus. & Prof. Code, § 17200 et seq.).

9

continued using his Slivkoff Drive address on his pleadings." It determined that a reasonably prudent person in Iovino's position would not have conducted himself or herself in the manner Iovino did.

Iovino timely appealed both judgments.

DISCUSSION

I.

Chase

### A. *Standard of Review*

A demurrer tests the legal sufficiency of a pleading. (Code Civ. Proc., § 430.30, subd. (a); *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) "Where . . . judicial notice is requested of a *legally operative* document—like a contract—the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its *legal effect*."[7] (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754.)

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) As we do so, we assume the truth of the petition's properly pleaded facts and judicially noticed matters. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "We do not, however, assume the truth of contentions,

---

[7]     Iovino argues the court should have denied the defendants' requests for judicial notice of the recorded documents because the statements contained therein were hearsay and contained false factual findings. Iovino did not oppose these requests in the superior court and therefore waived any challenge to them. (See *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512, fn. 4.)

deductions, or conclusions of law." (*Stearn*, at p. 440.) To prevail, "the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer. [Citation].' We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) If the pleading is insufficient on any ground specified in a demurrer, we will uphold the order sustaining the demurrer, even if it is not the ground relied upon by the trial court. (*Irwin v. Manhattan Beach* (1966) 65 Cal.2d 13, 20; *Intengan*, at p. 1052; *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.)

## B. *Res Judicata*

The doctrine of res judicata gives preclusive effect to a prior, final judgment involving the same controversy between the same parties or those in privity. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) "*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The preclusive impact is on both "issues that were actually litigated [and] also issues that could have been litigated." (*Colombo v. Kinkle, Rodiger & Spriggs* (2019) 35 Cal.App.5th 407, 416; *Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1527.)

11

Iovino's allegations challenging the transfer of the deed of trust from WaMu and the FDIC to Chase form the basis of his first three causes of action for wrongful foreclosure, violation of Civil Code section 3412, and quiet title. He contends that the foreclosure sale was improper because US Bank lacked the authority to sell his property. He bases this allegation on his claims that the chain of title is invalid. He alleges that before WaMu failed, the company securitized his note and sold it so that it was not part of the FDIC receivership sale.[8] Thus, the FDIC, in its capacity as a receiver for

---

[8] Iovino's opening brief states WaMu testified to Congress that it sold loans originated in 2007 for securitization without indorsing or transferring the corresponding Notes. He theorizes that Chase's acquisition of the note, which could have been retained for servicing, is insufficient to prove Chase acquired an interest in the property. Iovino does not reference the record or any documents for which he requests judicial notice to support this claim. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [requiring a party to support each reference to a matter in the record by citation to the record]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 (*Nwosu*) [failure to present argument with references to the record results in a forfeiture of any assertion that could have been raised].) Other factual claims regarding WaMu's testimony in public documents filed with the Securities and Exchange Commission likewise reference events outside the four corners of the complaint and without reference to the record. Although he offers a PDF link to a hearing before the permanent subcommittee on investigations of the committee on homeland security and governmental affairs, dated April 13, 2010, there is no corresponding request for judicial notice or indication this material was before the trial court. Nor does he direct us to relevant information within the document. (See *Nwosu*, at p. 1246 [statements in appellate briefs not support by citations to the record are improper and cannot be considered].)

WaMu, could not properly have assigned and transferred it to Chase. Iovino contends that because Chase held no valid interest in the property, it likewise lacked authority to transfer it to US Bank. US Bank, in turn, could not legally have substituted ALS as trustee. And none of the entities could have sold the property in foreclosure.

He also separately alleges that the 2014 corporate assignment of deed, which memorialized the 2008 transfer of the deed of trust from the FDIC to Chase, was forged, as were the assignments of the deed of trust from Chase to US Bank and the substitution of ALS as the trustee.

Chase contends the validity of the transfers has already been litigated to finality, with a determination on the merits in its favor in a previous action between it and Iovino; thus, res judicata bars claims arising from those allegations. We agree.

Iovino's 2011 lawsuit was between him as the plaintiff and Chase and ALS as defendants, and it ended in a final judgment on the merits following a motion for summary judgment.

Iovino sued Chase for slander of title, quiet title, injunctive relief, and fraud, among other things. The slander of title cause of action was based on Chase recording a notice of default against the property. He alleged this was slander because only the beneficiary of a deed of trust or its assignee could

---

Iovino argues that he alleged the purchase and assumption agreement between the FDIC and Chase did not identify his loan, and that congressional testimony and depositions indicate WaMu sold all of the loans it had originated before its failure and so had no beneficial interest to transfer to Chase. As we detail *post*, because the validity of the transfer to Chase has already been raised and resolved in previous litigation, this argument is precluded by res judicata. Further, the trial court did not consider the purchase and assumption agreement because Iovino objected to judicial notice of it, and the court sustained the objection.

record a notice of default against real property, and Chase was not a beneficiary. He also sought to quiet title on the basis that Chase held no interest in the property. Further, his request for injunctive relief was founded on the argument that Chase was not a holder of the note on the subject property. To make these contentions, Iovino alleged that WaMu had never assigned its beneficial interest to Chase, thereby challenging the validity of Chase's claim over the loan and promissory note, as well as the deed of trust.

Chase challenged these facts in a motion for summary judgment, which the court granted in its favor, disposing of the entire action. To reach this conclusion, the court necessarily determined that Chase was a beneficiary and held an interest in the property. Thus, it necessarily concluded the transfer of the deed of trust from WaMu to Chase (via the FDIC as receiver) was valid.

Iovino now makes the same basic argument, that Chase never held an interest in the property, challenging the same right. Although he now contends that WaMu securitized his note and sold it so that it was not part of the FDIC receivership sale, the foundational allegation is the same: WaMu never assigned its beneficial interest to Chase (not even through a receivership sale).

We look to the substance of a cause of action rather than its title. (*Standard Brands of California v. Bryce* (1934) 1 Cal.2d 718, 721 ["The subject matter of an action and the issues involved are determinable from the facts pleaded, rather than from the title or prayer for relief"]; see *San Diego Unified School Dist. v. County of San Diego* (2009) 170 Cal.App.4th 288, 305, [explaining judgment for defendant is bar to subsequent action by plaintiff based on same injury to same right even under different legal theory]; see

*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 571 [factual allegations control over title or label of pleading and over prayer or demand for relief].)  An action to quiet title, like one for declaratory relief, is to determine the legal relationship between the parties with reference to specific property; the goal is to finally determine all conflicting claims to the property.  (*Lechuza Villas West v. California Coastal Com* (1997) 60 Cal.App.4th 218, 242, quoting *Peterson v. Gibbs* (1905) 147 Cal. 1, 5.)

Iovino's former slander and quiet title causes of action requested a judicial determination that Chase held no ownership interest in the property. Similarly, his previous request for injunctive relief asked the court to declare the property rights as between him and Chase.  These are the same claims Iovino raises in his 2020 lawsuit, where he seeks to quiet the title of the property (third cause of action), argues Chase engaged in wrongful foreclosure by wrongfully claiming an interest in the property (first cause of action), and invokes cancelation rights under Civil Code section 3412 based on the allegedly wrongful transfer of the deed of trust (second cause of action).

It does not matter that the 2019 transfer had not yet occurred or that the 2014 recording had not happened.  The court previously determined that the transfer of the deed of trust to Chase, which occurred in 2008 even though it was not recorded until 2014, was valid.  The first, second, and third causes of action, which are each based on Iovino's challenge to Chase's interest in the property, are barred by res judicata, as are any claims that derive from the allegation that Chase did not hold a legal interest in the mortgage.

Finally, to the extent that Iovino's challenge to the court's application of judicial notice extends to its acceptance of the judgment in the 2011

15

matter, we conclude there was no error.  Even if the court's conclusion that Chase appropriately claimed an interest in the property was a factual conclusion rather than a legal one, " 'the finding itself may be a proper subject of judicial notice if it has a res judicata or collateral estoppel effect in a subsequent action.' [Citation.]" (*Hawkins v. SunTrust Bank* (2016) 246 Cal.App.4th 1387, 1393.)  " '[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " (*Ibid.*, quoting *Ashe v. Swenson* (1970) 397 U.S. 436, 443.)

Although we conclude res judicata forecloses the causes of action that rely on a challenge to Chase's interest in the property, we note that Iovino's causes of action also fail because he does not allege any prejudice; he does not allege he was current on his loan or that he was excused from fulfilling the tender requirement under a judicially-recognized exception.  (See *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 47.)  Without these allegations, he cannot demonstrate wrongful foreclosure. (See *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561-562 [describing elements of wrongful foreclosure, including that the mortgagor " ' "tendered the amount of secured indebtedness or was excused from tendering" ' "].)  Presumably, he contends there is no need to include such an allegation because he alleges the transfers were void, not voidable. (See *Kalnoki*, at p. 47 [explaining courts have found tender not required where borrower attacks validity of underlying debt].)  However, as we explained *ante*, this claim is precluded.

C. *Fourth and Fifth Causes of Action*

The fourth cause of action, which names only Chase and ALS as defendants, and the fifth cause of action, against Chase, US Bank, and ALS,

16

alleged violations of Civil Code sections 2924f and 2923.5 for failure to provide proper notice of the trustee sale. The documentation attached to the complaint shows it was US Bank, not Chase, that substituted ALS as the new trustee. Further, the factual allegations and the attached documentation all show that ALS acted on behalf of US Bank, not Chase, when it recorded the notice of sale and the final sale of the property on May 28 and July 8 respectively. In short, there are no allegations that Chase took action to sell the property or that any of the other named entities were acting on Chase's behalf. Because Iovino does not, and cannot, allege that Chase was the foreclosing entity, Iovino cannot sustain a cause of action against Chase on that basis.

Iovino did not substantively oppose Chase's demurrer to his fourth cause of action. Accordingly, the court appropriately sustained the demurrer on that basis as well, and Iovino has forfeited that claim on appeal. (See *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776 ["As a general rule, a claim of error will be deemed to have been forfeited when a party fails to bring the error to the trial court's attention by timely motion or objection"].)

Moreover, to allege economic damages after a deed of sale is recorded, a party must allege the wrongdoer is "a mortgage servicer, mortgagee, beneficiary, or authorized agent." (Civ. Code, § 2924.19, subd. (b)). Iovino does not make this allegation. Nor can he because he insists Chase does not have an interest in the property.

### D. *Sixth Cause of Action*

On appeal, Iovino argues there is a basis for the UCL claim because Ellsworth's declaration shows an intentional misrepresentation, e.g., that defendants were continuing to review his application for loan modification and had cancelled the sale. However, these factual allegations regard US

17

Bank, not Chase. And because it was US Bank, not Chase, that foreclosed and sold the property, there is no basis for a UCL cause of action against Chase. Accordingly, the trial court properly sustained the demurrer on this sixth cause of action.

In his motion for a new trial under Code of Civil Procedure sections 657 and 659, Iovino argued that the UCL cause of action is supported by claims for intentional misrepresentation and fraudulent concealment, arguments he repeats in his appeal. He contends that because the loan was not part of WaMu's assets at the time the bank failed, it was not among the loans that the FDIC transferred to Chase. Further, Chase misrepresented that the loan was included, and Chase concealed information that would have uncovered its fraud. However, he did not present these possibilities below; Iovino did not seek leave to amend at all.

Moreover, Iovino's claims that he now has better proof that his loan was not transferred to Chase are foreclosed by res judicata. He alleged in his 2011 lawsuit that Chase obtained no interest from WaMu. These are the same allegations he makes in the present case.

## II.

## US Bank & Rushmore

Iovino contends the court abused its discretion by denying his motion to vacate the default judgment following his failure to timely respond to US Bank's demurrer.

Code of Civil Procedure section 473, subdivision (b) provides the court with discretion to relieve a party from a judgment taken against him or her through the party's mistake, inadvertence, surprise, or excusable neglect. (Code Civ. Proc., § 473, subd. (b).) Because a motion to vacate the default

18

" ' " is addressed to the sound discretion of the trial court, . . . in the absence of a clear showing of abuse . . . the exercise of that discretion will not be disturbed on appeal." ' [Citations.]" (*Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1318.) Moreover, " 'if a party fails to show that a judgment [or order] has been taken against him through his mistake, inadvertence, surprise or excusable neglect the court may not grant relief. It has no discretion.' " (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1042.)

A party seeking relief under Code of Civil Procedure section 473 based on mistake or neglect must demonstrate that the mistake or neglect was excusable, meaning a reasonably prudent person under the same circumstances might have made the same error. (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435 [describing the showing required for relief under Code Civ. Proc., § 473].)

Iovino offered two reasons for why his mistake or neglect was excusable.[9] First, around the time the defendants served the demurrer, he had moved to a new address and filed a change of address form with the United States Post Office. He did not receive the mailed copy of the demurrer until May 1, 2021, the day after the hearing. Because he received the pleadings after the date of the hearing, he was "not given the opportunity to address his failure to file an opposition . . . or to appear to argue the matter

---

[9] Iovino also argued that the defendants did not meet and confer with him, implying that would have provided him notice of their intent to file the demurrer. The trial court concluded opposing counsel had properly reached out to Iovino in email and by telephone on December 23 and 24, 2020. Iovino concedes in his opening brief that the meet and confer requirement was met.

on his behalf."[10] Second, he did not understand the demurrer pleadings or the ramifications of failing to appear, and he could therefore not respond to them until after seeking legal counsel to explain them.[11] He also argued the defendants were not prejudiced by his delay. He attached a proposed opposition to the demurrer for the court's consideration in the event it set aside the default judgment.

On April 4, 2021, four months after he moved and changed his address with the post office, Iovino appeared by filing a notice of limited representation in which he listed the Slivkoff address as the address for service, the same address to which the January demurrer had been mailed. Then, on April 28, 2021, Iovino filed a change of address form with the court, listing the Hawk Ridge address, where he also had his mail forwarded through the post office.

Iovino argues that his failure to alert the court to his change of address was excusable because he was self-represented and therefore entitled to some leniency. "Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; see also *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126 [pro. per. litigant held to same rules of procedure as attorney].) Thus, "as is the case with attorneys, pro. per.

---

[10] It is not clear from this statement whether Iovino means to convey that the mail was never actually forwarded, and Iovino eventually retrieved the demurrer at the Slivkoff address; or if it was forwarded to the Hawk Ridge address, but the postal service took four months to complete that process.

[11] Iovino does not restate this reason on appeal, instead focusing on the mistake in failing to change his address.

litigants must follow correct rules of procedure." (*Nwosu*, *supra*, 122 Cal.App.4th at p. 1247.) " 'A lay person, who is not indigent, and who exercises the privilege of trying his own case must expect and receive the same treatment as if represented by an attorney–no different, no better, no worse. [Citation.]" (*Westervelt v. Robertson* (1981) 122 Cal.App.3d Supp. 1, 8 (*Westervelt*).)

In cases where pro. per. litigants have failed to change their address with the court and consequently not received the properly-served notice of case-dispositive pleadings, courts have not viewed the self-representation as a reason for leniency. For example, in *Westervelt*, the pro. per. defendants filed and served an answer but did not appear on the day of trial. (*Westervelt*, *supra*, 122 Cal.App.3d Supp.1, 5.) When the defendants eventually realized judgment had been entered against them, they moved for an order setting aside the judgment, contending they had not been served with and had not received a notice of trial because they had moved from the rental property and received no mail addressed to that address. (*Id.* at pp. 5-6.) Based on evidence in the record that the defendants had not returned their keys; that the type of car defendants drove was seen in the driveway in the weeks leading up to the trial date; and that all the documents that defendants filed gave the rental address as their address of record, the court of appeal concluded it would have been reasonable for the trial court to infer that the defendants received notice of trial. (*Id.* at p. 7.) The appellate court explained that the failure to notify the court of a change of address does not allow a party to claim improper notice. (*Id.* at p. 8.) Consequently, lack of notice was not an excuse for failing to appear.

In *Lint v. Chisholm* (1981) 121 Cal.App.3d 615 (*Chisholm*), a self-represented attorney failed to notify the court clerk of a change of address,

did not receive notice of trial, and consequently failed to appear at trial. (*Id.* at pp. 618-619.) Chisholm argued that "overwhelming domestic problems resulted in his inability to receive mail regularly during the period in which notice was sent." (*Id.* at p. 620.) The court of appeal concluded Chisholm's failure to notify the court of his address change or otherwise adequately arrange for mail delivery was not the act of a reasonably prudent person in the same situation. (*Ibid.*) Although Chisholm was not licensed to practice in California, he was a member of two bars and party to at least seven other lawsuits in San Diego County during the time in which the notice was sent, and he was aware of his duty to inform the court of an address change. (*Id.* at pp. 620-621.) Thus, he could not claim lack of notice as an excuse for failing to appear at trial. (*Ibid.*)

In *Westervelt*, like here, there was evidence of actual notice, so the delay in response was unjustified. In *Chisholm*, the court focused on the defendant's knowledge of his obligation to report the change of address and the failure to follow through as the reason it did not find the mistake excusable. Similarly here, Iovino changed his address on April 28, indicating knowledge of the requirement to do so. In both *Westervelt* and *Chisholm*, the courts treated the pro. per. litigants as they would any represented party. Those courts offered no leniency for the parties' failure to change their addresses with the court because they were self-represented. Just as the courts in *Westervelt* and *Chisholm* did not give the litigants leniency as a result of their self-representation, the court here did not give Iovino leniency due to his status as a pro. per. litigant.

Iovino does not direct us to any case law that treats pro. per. litigants in this circumstance differently. He cites several cases in which courts offer leniency in permitting pro. per. litigants opportunities to *amend* their

22

pleadings.  However, none of the cases he cites involve a party that failed to timely respond to a demurrer then, after entry of a default judgment, were granted the opportunity to oppose the demurrer and amend the complaint. (See *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 371 [declining to remand to allow for *amended* pleading because complaint was not defective]; *Schaefer v. Berinstein* (1956) 140 Cal.App.2d 278, 288, 294 [explaining complaint allegations must be "liberally construed with a view to substantial justice between the parties" and concluding the complaint alleged sufficient facts to support a fraud claim]; *Peak v. Richmond Elementary School Dist.* (1958) 161 Cal.App.2d 366, 367-369 [overruling demurrer after finding the facts sufficiently stated a claim for negligence].)

Like the court in *Westervelt*, the court here treated Iovino as having received actual notice of the demurrer.  It recognized Iovino's claim that "he did not receive the documents until after the hearing."  Yet, it nonetheless concluded that Iovino provided no persuasive reason for not sharing his change of address with either the court or opposing parties.  It further considered that the Slivkoff address was the only one on file with the court and the only address Iovino ever listed on the pleadings.  Like the court in *Chisholm*, the court here concluded that a reasonable person in similar circumstances would not fail to change the address on file with the court.

Iovino does not claim he failed to file a change of address because he was ignorant of the requirement.  Indeed, he filed a change of address with the trial court eventually, months after ceasing to reside on the property and after filing additional papers with the Slivkoff address.  He does not explain what prevented him from changing his address with the court when he filed

23

the form with the postal service, or why he continued to use the Slivkoff address on all his pleadings

Iovino's emphasis on the leniency afforded to amend a complaint is misplaced. The issue here is whether the court abused its discretion in concluding the default was not the result of excusable mistake or neglect. We find no fault in the trial court's conclusion. The failure to comply with the requirement to update the court and parties violates California Rules of Court, rule 2.200, which requires an attorney or self-represented party to notify the court and all parties in writing of a change of address.

Because we conclude that the court did not abuse its discretion by denying the motion to vacate the judgment, we affirm the judgment in favor of US Bank and Rushmore. Accordingly, we do not reach the separate, substantive basis for the court's sustention of the demurrer.[12]

---

[12] Defendants remain the prevailing parties; thus, we do not revisit the court's award of attorney fees.

## DISPOSITION

The judgments in favor of Chase and in favor of US Bank and Rushmore are affirmed.  Appellant is to bear costs on appeal.


                                              HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.