Filed 1/23/25  Thompson v. County of Riverside CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NICHOLE THOMPSON et al., | D084671 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CVRI2304383) |
| COUNTY OF RIVERSIDE, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Riverside County, Godofredo C. Magno, Judge.  Affirmed.

Law Offices of Christian Contreras, Christian Contreras; Gastélum Law, Denisse Gastélum, and Selene Estrada-Villela for Plaintiffs and Appellants.

Burke Williams & Sorensen, Nathan A. Oyster, Caylin W. Jones and Michaela Sozio for Defendant and Respondent.


Nichole Thompson and Matthew Upton appeal an order denying their petition for relief from the statutory requirement to present a timely claim to the County of Riverside (the County) before suing it for the wrongful death of

their daughter.  Appellants contend they presented a timely claim, and even if they did not, they were entitled to relief because they sought to file a late claim within a reasonable time, they showed any untimeliness was due to excusable neglect, and allowing a late claim would not prejudice the County. We affirm the order.

## I.

## BACKGROUND

On April 28, 2022, appellants' 21-year-old daughter Alicia was found hanging in her cell at a jail operated by the County.  Efforts to resuscitate her were unsuccessful, and she was pronounced dead by paramedics who had been summoned to the jail.

On April 29, 2022, a local law enforcement officer went to Thompson's house in West Virginia and told her Alicia had died while in the custody of the County sheriff's department but provided no details about the death. Thompson telephoned the sheriff's department that same day and told a deputy coroner that Alicia "was depressed and had mental health problems after a good friend of hers committed suicide when she was 16 years old"; that she suspected Alicia was abusing methamphetamine based on "erratic behavior" and "paranoia"; and that she had not heard from Alicia since November 2021, when Alicia "talked about dead relatives as if they were still alive, and spoke of spending time with people who . . . could not possibly be with her."

Thompson spent the next two months trying unsuccessfully to get more information about Alicia's death from the County sheriff's department.  By late June 2022, "it was becoming increasingly clear" to Thompson that the sheriff "was attempting to stonewall [her] efforts to uncover the truth behind

[her] daughter's death." Thompson then made "many efforts" to retain an attorney, but none "wanted to take [her] case."

On August 15, 2022, a County deputy sheriff telephoned Thompson and told her the cause of Alicia's death had been determined to be suicide. The deputy provided "no other explanations." News of her daughter's suicide caused Thompson to "bec[o]me overwhelmed with despair, which was only further exacerbated when [she] would read [the sheriff's] public comments about the meritless nature of any lawsuit that arose from in-custody deaths in his [j]ails."

Over the next several months, Thompson saw "other families mobilizing and coming together to bring civil rights lawsuits" against the County. That made her "hopeful" and "determined to retain attorneys who would help [her] uncover the truth behind [Alicia's] death."

On February 9, 2023, Thompson hired the attorneys who are now representing her on appeal. On the next day, pursuant to the Government Claims Act (the Act; Gov. Code, § 810 et seq.; undesignated section references are to this code), the attorneys presented a claim to the County for damages for Alicia's wrongful death.

On February 17, 2023, the County denied the claim on the ground it had not been presented within six months of the date of death. (See §§ 901, 911.2, subd. (a).) The County advised appellants their only recourse at that time was to apply without delay for leave to present a late claim. (See § 911.4.)

On April 6, 2023, appellants submitted an application for leave to present a late claim. The County denied the application six days later. The denial letter contained the statutorily required warning that if appellants wanted to file a court action, they had six months to petition the appropriate

3

court for an order relieving them of the timely claim presentation requirement of the Act. (§§ 911.8, 946.6.)

On August 10, 2023, appellants petitioned the trial court for relief under section 946.6. They alleged the claim presented on February 10, 2023, was timely because it was presented within six months of August 15, 2022, the date Thompson learned Alicia's death had been ruled a suicide and for the first time had a sufficient factual basis to make her suspect she had a cause of action against the County. Appellants further alleged that even if their initial claim was untimely, they should be relieved of the untimeliness because they timely sought leave from the County to file a late claim; any untimeliness in the initial claim was due to excusable neglect, in that for several months after Alicia died, Thompson diligently but unsuccessfully tried to retain counsel and to obtain information from the County about Alicia's death; and allowing the late claim would not prejudice the County's ability to defend against a wrongful death action. In support of the petition, Thompson submitted a declaration in which she described when and how she learned Alicia had died and the cause of death, her efforts to obtain from the County information about the death, and her attempts to hire an attorney. Upton did not submit a declaration. Appellants also submitted copies of the February 1, 2023 claim to the County, the application to present a late claim, the County's denials of the claim and application, the County coroner's report, and other documents.

The County opposed the petition. It argued the claim presented on February 10, 2023, was untimely because appellants' wrongful death cause of action accrued on the date Alicia died, not on the date Thompson first learned Alicia had committed suicide. The County also argued relief was unavailable because appellants had not shown their failure to submit a timely claim was

4

the result of any mistake, inadvertence, surprise, or excusable neglect within the meaning of section 946.6, and because it had been prejudiced by the passage of time since Alicia's death.

The trial court held a hearing and denied the petition. The court rejected appellants' argument that accrual of the wrongful death cause of action was delayed until Thompson learned on August 15, 2022, that Alicia committed suicide. It ruled the claim accrued on the date of death, i.e., April 28, 2022, and appellants' February 10, 2023 claim to the County was not presented within six months of accrual as required by section 911.2. The court ruled appellants were not entitled to relief from the timely claim presentation requirement because they had not applied to the County within a reasonable time for leave to present a late claim and had not shown their failure to present a timely claim was due to any mistake, inadvertence, surprise, or excusable neglect within the meaning of section 946.6.

Appellants appealed the order denying their petition for relief under section 946.6. (See *Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435, fn. 8 (*Ebersol*) [order denying relief under § 946.6 is appealable].)

## II.

## DISCUSSION

Appellants raise two claims of error. They contend the trial court erroneously rejected their argument the claim presented to the County was timely under the delayed discovery rule. They also contend the court abused its discretion by denying their petition for relief from the timely claim presentation requirement of the Act. We consider each claim of error in turn.

A.    *Timeliness of Claim Presented to the County*

Appellants argue that under the delayed discovery rule, their cause of action against the County for Alicia's wrongful death did not accrue until

5

they learned on August 15, 2022, that she killed herself, because that was the first time they had reason to suspect any wrongdoing. Appellants further argue the claim they mailed to the County on February 10, 2023, was timely because it was presented within six months of accrual as required by the Act. We disagree.

A claim related to a cause of action for wrongful death against a public entity "shall be presented . . . not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).) The accrual date is the date on which the cause of action would have accrued under the statute of limitations that would have applied had there been no requirement to present a claim to the public entity before suing it. (§ 901; *Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 63.) For a wrongful death cause of action, "at least as a usual matter, the date of accrual . . . is the date of death." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 (*Norgart*).) The delayed discovery rule postpones accrual when the plaintiff is " 'blamelessly ignorant' " of the tortious cause of the death. (*Frederick v. Calbio Pharmaceuticals* (1979) 89 Cal.App.3d 49, 54.) Under the rule, the cause of action accrues when "the plaintiff comes at least to suspect, or have reason to suspect, a factual basis for its elements." (*Norgart*, at p. 405.) For a cause of action to accrue, the plaintiff need not suspect specific facts underlying each of its elements; it is enough that she at least has reason to suspect a type of wrongdoing has injured her. (*Ovando*, at p. 66 & fn. 10.) Application of the delayed discovery rule ordinarily presents a question of fact, but it presents a question of law we review de novo where, as here, the pertinent facts are undisputed. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 (*Jolly*); *Communities for a Better Environment v. Bay Area Air Quality Management Dist.* (2016) 1 Cal.App.5th 715, 722; see *Simms v. Bear Valley Community Healthcare*

6

*Dist.* (2022) 80 Cal.App.5th 391, 399 ["where the analysis does not rest on disputed issues of fact better postponed for determination by a jury, 'the issue of timely filing of a claim may be determined in a claim-relief proceeding' "].)

The evidence submitted with appellants' petition for relief from the timely claim presentation requirement showed they (or at least Thompson) suspected they had a wrongful death cause of action more than six months before they presented their claim to the County.[1] Alicia died at age 21 while confined at a County jail on April 28, 2022. When informed of the death the next day, Thompson spoke to a County deputy coroner and told him Alicia had mental health problems, engaged in erratic behavior and bizarre conversations, and might have been abusing methamphetamine. Over the next two months, Thompson repeatedly contacted the County sheriff in unsuccessful attempts to get more information about Alicia's "sudden death." "Because it was becoming increasingly clear" the sheriff "was attempting to stonewall [her] efforts to uncover the truth behind her daughter's death," she "attempted to retain an attorney . . . to take [her] case" but was unsuccessful. Hence, by late June 2022 Thompson knew her troubled daughter had died suddenly and without explanation at age 21 while in the County's custody, suspected the County was stonewalling her, and tried to get an attorney to take her case. In other words, she "ha[d] a suspicion of wrongdoing, and therefore an incentive to sue," by no later than June 30, 2022. (*Jolly, supra*, 44 Cal.3d at p. 1111; cf. *id.* at p. 1112 [plaintiff's "interest[ ] in 'obtaining more information' about [drug] because she wanted to 'make a claim' "

---

[1] "[E]ach heir has a 'personal and separate cause of action' " for wrongful death, and "the statute of limitations runs separately against each heir's cause of action." (*San Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1551.) It is unclear from the record whether Thompson was sharing information pertinent to accrual with Upton.

started limitations period].) The February 10, 2023 claim did not comply with the requirement of presentation to the County within six months of accrual of the cause of action. (§ 911.2, subd. (a).)

Appellants insist their claim was timely because they had no reason to suspect any wrongdoing in connection with Alicia's death until August 15, 2022, when a County deputy coroner informed Thompson the death had been ruled a suicide. Appellants assert, repeatedly, that they did not suspect any wrongdoing until they learned the cause of death. But they do not explain why they needed that specific piece of information before they reasonably could suspect that Alicia's previously unexplained death at such a young age while in the custody of a County sheriff who stonewalled efforts to get more information about the death was not the result of wrongdoing. For a cause of action to accrue, a plaintiff "need not know the 'specific "facts" necessary to establish' the cause of action; rather, [the plaintiff] may seek to learn such facts through the 'process contemplated by pretrial discovery.' " (*Norgart, supra*, 21 Cal.4th at p. 398.) Rather, a cause of action accrues when the plaintiff "has reason at least to suspect a factual basis for its elements" (*ibid.*), i.e., "once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry*' " ' " (*Jolly, supra*, 44 Cal.3d at pp. 1110–1111). As we explained in the immediately preceding paragraph, appellants (or at least Thompson) had such notice or information by no later than June 30, 2022.

Appellants contend the claim was timely as to Upton on the additional grounds that he "was incarcerated in a federal prison in West Virginia at all relevant times" and was unaware of Alicia's death "prior to the statutory time to file a claim." As factual support for these grounds, appellants cite a declaration in which one of their attorneys made assertions about Upton's

8

incarceration and knowledge of Alicia's death, and a request for judicial notice of a page from the Federal Bureau of Prisons' Web site that listed Upton's age, race, sex, location, and release date. The County objected to admission of this evidence, however, and the trial court impliedly sustained the objections by ruling that "Upton present[ed] no admissible evidence regarding when or how he discovered Alicia's death." Appellants have not challenged that ruling on appeal. Having provided no information about the time and manner of discovery of Alicia's death and related circumstances and the inability to have made earlier discovery despite reasonable diligence, Upton may not rely on the delayed discovery rule to postpone accrual of his wrongful death cause of action. (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 175; *Bastian v. County of San Luis Obispo* (1988) 199 Cal.App.3d 520, 527.) His incarceration by itself would not postpone accrual, because the tolling statute for prisoners does not apply to a cause of action against a public entity for which the Act requires presentation of a claim. (Code Civ. Proc., § 352.1, subd. (b).) Thus, the "usual" rule that "the date of accrual of a cause of action for wrongful death is the date of death" applies to Upton. (*Norgart, supra*, 21 Cal.4th at p. 404.) Under that rule, the February 10, 2023 claim was untimely because it was presented to the County more than six months after Alicia died on April 28, 2022. (§ 911.2, subd. (a).)

B.     *Relief from Timely Claim Presentation Requirement*

Appellants complain the trial court abused its discretion by denying their petition for relief from the timely claim presentation requirement. They contend the court failed liberally to construe the statute authorizing relief and to resolve any doubts in their favor, and erroneously ruled they neither applied to the County for leave to present a late claim within a reasonable

9

time nor established any excusable neglect that would justify relief. Appellants also contend the County failed to present any evidence that allowing presentation of a late claim would cause prejudice. As we shall explain, appellants have not established any reversible error.

To obtain relief from the timely claim presentation requirement of the Act, a petitioner must satisfy two requirements. First, the petitioner must show by a preponderance of the evidence that she applied to the public entity for leave to present a late claim "within a reasonable time" not to exceed one year after accrual of the cause of action. (§ 946.6, subd. (c); see § 911.4, subd. (b); *Ebersol, supra*, 35 Cal.3d at p. 431.) Second, as relevant to this appeal, the petitioner must show by a preponderance of the evidence that "[t]he failure to present a [timely] claim was through . . . excusable neglect." (§ 946.6, subd. (c)(1); see *Ebersol*, at p. 431.) If the petitioner satisfies these requirements, the burden shifts to the public entity to show by a preponderance of the evidence "that it would be prejudiced in the defense of the claim" were the court to grant relief. (§ 946.6, subd. (c)(1); see *Ramariz v. County of Merced* (1987) 194 Cal.App.3d 684, 688–689.)

A decision to grant or deny relief under section 946.6 is reviewed for abuse of discretion. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275; *N.G. v. County of San Diego* (2020) 59 Cal.App.5th 63, 73 (*N.G.*).) Any doubts should be resolved in favor of granting relief. (*Bettencourt*, at p. 276; *N.G.*, at p 73.) Denial of relief constitutes an abuse of discretion if undisputed evidence establishes grounds for relief and granting relief would not prejudice the public entity (*Bettencourt*, at p. 276; *Ebersol, supra*, 35 Cal.3d at p. 432), or if the decision to deny relief exceeds the bounds of reason (*County of Alameda v. Superior Court* (1987) 196 Cal.App.3d 619, 624 (*County of Alameda*)).

Appellants did not meet their burden to prove the failure to present a timely claim to the County was due to "excusable neglect." (§ 946.6, subd. (c)(1).) "Excusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances." (*Ebersol, supra*, 35 Cal.3d at p. 435.) Whether an act or omission is excusable depends on its nature and on whether the party seeking relief from the timely claim presentation requirement was otherwise diligent in pursuing the claim. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1782–1783 (*Munoz*).) Appellants base their excusable neglect argument on the same facts as those of their delayed discovery rule argument. They contend that despite "significantly diligent efforts to discover the relevant facts concerning [Alicia's] death" and "to hire an attorney," Thompson "was unable to even discover[ ] a cause of death, let alone a manner of death," until August 15, 2022. Without such "basic information," appellants say, there was no reason to suspect any wrongdoing, and they acted as reasonably prudent persons in not presenting a claim to the County within six months of Alicia's death.[2] We already rejected the premise of this argument in part II.A., *ante*, where we concluded that although appellants did not learn Alicia had committed suicide until August 15, 2022, they (or at least Thompson) had enough information to suspect wrongdoing by no later than June 30, 2022, and thus had to present a claim to the County by December 30, 2022. A

---

[2] Upton submitted no admissible evidence that he took any steps during the six months after Alicia died to obtain information about her death and the County's involvement therein. "A showing of reasonable diligence is required to establish that the petitioner acted as a reasonably prudent person." (*N.G., supra*, 59 Cal.App.5th at p. 74.) The "petitioner may not successfully argue excusable neglect when he or she fails to take any action in pursuit of the claim within the six-month period." (*Munoz, supra*, 33 Cal.App.4th at pp. 1778–1779.)

11

reasonably prudent person who suspected wrongdoing would have presented a timely claim describing the "injury, damage or loss *so far as it may be known at the time of presentation*" (§ 910, subd. (d), italics added), even if the person did not have all the information needed to present the claim with "perfect precision" (*Munoz*, at p. 1785). In rejecting appellants' argument that their failure to present a timely claim was due to excusable neglect, the trial court neither " ' " 'exceeded the bounds of reason [n]or contravened the uncontradicted evidence' " ' " and therefore did not abuse its discretion in denying relief under section 946.6. (*County of Alameda, supra*, 196 Cal.App.3d at p. 624.)

We are not persuaded to reach a different conclusion by the cases appellants say are "similar" to theirs. In *Viles v. State of California* (1967) 66 Cal.2d 24, after insurance company representatives advised the plaintiff that he had one year to file a claim for the wrongful death of his wife in an automobile accident, he erroneously concluded he had one year to sue the state based on the dangerous condition of the highway on which the accident occurred. Our Supreme Court held the plaintiff was entitled to relief from the timely claim presentation requirement because "the average prudent man in the conduct of important business affairs" might also have relied on the advice of the insurance companies' representatives. (*Id.* at pp. 29–30.) Appellants point to nothing in the record showing they were misled into believing they had more than six months from accrual of their wrongful death cause of action to present a claim to the County. The other cases appellants cite involved an attorney's " 'office error in calendaring a date' " (*Nilsson v. City of Los Angeles* (1967) 249 Cal.App.2d 976, 978) or "failure to open a file which in turn would have reminded [the attorney] of the [time] limitation upon presentation of [the clients'] claim" (*Flores v. Board of Supervisors*

12

(1970) 13 Cal.App.3d 480, 483). Such "calendar errors by an attorney or a member of his staff are, under appropriate circumstances, excusable." (*Ibid.*; *Nilsson*, at p. 980.) No similar breakdown in law office procedures that normally would have ensured timely claim presentation occurred in this case. Appellants' cited cases do not support granting relief from the timely claim presentation requirement in this case.

Our conclusion appellants did not establish "excusable neglect" (§ 946.6, subd. (c)(1)) makes it unnecessary for us to consider their argument the trial court erroneously ruled they had not applied for leave to present a late claim "within a reasonable time" (*id.*, subd. (c)). To obtain relief from the claim presentation requirement, a petitioner must prove "*both* that the application to the public entity for leave to file a late claim was presented within a reasonable time *and* that the failure to file a timely claim was due to mistake, inadvertence, surprise or excusable neglect." (*Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293, first italics added.) Additionally, since appellants did not establish excusable neglect, the burden never shifted to the County to "establish[ ] that it would be prejudiced in the defense of the claim" if relief were granted. (§ 946.6, subd. (c)(1); see *Department of Water & Power*, at p. 1297 ["The public entity has no burden of establishing prejudice arising from the failure to file a timely claim until after the party seeking relief has made a prima facie showing of entitlement to relief."].) We therefore need not, and do not, address their contention the County failed to establish prejudice. (*Hasty v. County of Los Angeles* (1976) 61 Cal.App.3d 623, 627.)

### III.

### DISPOSITION

The order denying relief from the timely claim presentation requirement is affirmed.


IRION, Acting P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.